729 F.2d 541
 34 Fair Empl.Prac.Cas. 347,
33 Empl. Prac. Dec. P 34,223
Mary Susan GOODWIN, Appellee,
v.
The CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI, Appellant,
and
William Corrigan,
v.
ST. LOUIS COUNTY, MISSOURI.
Mary Susan GOODWIN, Appellee,
v.
The CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI, and
William M. Corrigan, Appellant,
v.
ST. LOUIS COUNTY, MISSOURI.
Mary Susan GOODWIN, Appellee,
v.
The CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI, and William
M. Corrigan, Appellees,
v.
ST. LOUIS COUNTY, MISSOURI, Appellant.
 Nos. 83-1161 to 83-1163.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 15, 1983.
Decided March 6, 1984.
 
 Shulamith Simon, Mark G. Arnold, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., for appellant, Circuit Court of St. Louis County.
 Burton Newman, St. Louis, Mo., for appellee Mary Susan Goodwin.
 Before ROSS, ARNOLD and BOWMAN, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 Mary Susan Goodwin, a lawyer, claims that she was removed from her position as a hearing officer for the Juvenile Division of the Circuit Court of St. Louis County, Missouri, because of her sex. She brought this action against the Circuit Court and Judge William M. Corrigan, presiding judge of the Juvenile Division, under 42 U.S.C. Sec. 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e et seq.[1] A jury awarded plaintiff nominal damages of $1 and punitive damages of $1,000 on her Sec. 1983 claim against Judge Corrigan. The District Court[2] gave plaintiff a declaratory judgment against the Circuit Court on her Title VII claim, holding that she had been discriminated against because of her sex.[3] The District Court also awarded plaintiff attorneys' fees and costs of $17,972.29, this award being made against the Circuit Court under 42 U.S.C. Sec. 2000e-5(k) and against Judge Corrigan under 42 U.S.C. Sec. 1988. In addition, the Circuit Court was awarded judgment on its third-party claim against St. Louis County, requiring the County to reimburse the Court for whatever the Court had to pay Goodwin.
 
 
 2
 Judge Corrigan, the Circuit Court, and the County appeal. We affirm the judgment against Judge Corrigan. There was sufficient evidence to take the case to the jury on the issue of sex discrimination under Section 1983. As to the Title VII claim, we hold that the District Court erroneously placed the burden of proof on the Circuit Court. The judgment against the Court is vacated, and the cause remanded for a new finding to be made under the correct legal standard, which places the burden of persuasion on the issue of discrimination on the plaintiff. The appeal of the third-party defendant St. Louis County will be held in abeyance pending the District Court's new finding on the Title VII claim and our review of that finding. If in the end the Title VII claim is held to be without merit, the third-party action will be moot and fall of its own weight. Judgment against the third-party defendant is based solely on the Title VII judgment against the Circuit Court. Judge Corrigan does not have a judgment over against the County for reimbursement of whatever he must pay out by reason of the Section 1983 claim.
 
 
 3
 I. The Factual Background.
 
 
 4
 In November 1971, Judge Robert G.J. Hoester, the Circuit Judge then presiding over the Juvenile Court, hired Goodwin as a hearing officer for the Juvenile Court. She served in this position under four different juvenile judges until March 1979. During this time she heard about 1,000 juvenile status and child neglect cases a year.
 
 
 5
 In 1979, Judge Corrigan became juvenile judge. He took this job at the urging of several Circuit Judges who felt that he could restore public confidence in the Juvenile Court. Judge Corrigan investigated the situation at the Court and decided to make several changes. One of these changes involved the number of hearing officers. The judge determined that two of the three existing hearing-officer positions could be eliminated, and that the remaining hearing officer would be used to hear juvenile traffic and misdemeanor cases. This remaining position would itself be eliminated if legislation passed removing traffic offenses from Juvenile Court and moving them to adult court. One of the three hearing officers voluntarily stepped down, leaving Goodwin and Craig Donis, who had been a hearing officer for about two years.
 
 
 6
 On Thursday, March 1, three days before making his decision about whom to retain as a hearing officer, Judge Corrigan stepped into the office of Commissioner Branom at the Juvenile Court and reportedly said, "This court will never run well so long as there are women in charge."[4] Judge Corrigan could not remember making the remark but did not deny that he made it. Branom testified that he laughed at this remark and that Judge Corrigan said it smiling, with "a twinkle in his eye," and made the remark partly to "needle" Branom's secretary, Holly Jaeger, whom the judge had frequently "needled" despite the fact that it upset her. He also testified that in his opinion the expression "women in charge" referred to Corinne Richardson, the director of the legal department. Branom said that shortly before the judge made the remark, he had had a conversation with the judge in which Branom expressed his disapproval of an action that Richardson had taken.
 
 
 7
 The next day Judge Corrigan called upon a four-member committee of Juvenile Court officials to express its preference over who should be retained as a hearing officer and who should be moved into the legal department. Two members voted to retain Donis as a hearing officer (Commissioners Lemay and Branom), and two voted to retain Goodwin (Richardson, director of the legal department, and Ken Hensiek, director of social services and chief juvenile officer). Lemay stated he felt that Donis had a better working knowledge of the law than Goodwin, and Branom stated that Donis was better at trying cases in the courtroom. Richardson testified that she voted to retain Goodwin as a hearing officer because she had prior experience with Donis in the legal department and would feel "comfortable" if he were reassigned there. Hensiek testified that he voted to retain Goodwin as a hearing officer and move Donis to the legal department because he felt Donis had fairly extensive experience with the legal department and was the better person to assume those responsibilities. At the end of the meeting, the judge told the committee members that this was a difficult decision and that he would think about it over the week end and let them know on Monday.
 
 
 8
 The judge testified that he decided on Sunday, March 3, to retain Donis as hearing officer and move Goodwin into the legal department. He testified that he based this decision on complaints he had heard about Goodwin, specifically that she handled hearings more like a social worker than a judicial officer and that she was deficient in her knowledge of the rules of evidence. On Monday, March 5, he informed Goodwin of his decision.
 
 
 9
 In October 1980, Goodwin filed this suit for employment discrimination. Shortly thereafter, the judges of the St. Louis County Circuit Court met to discuss the suit. At this meeting, Judge Corrigan stated to Judge Hoester that the litigation was Judge Hoester's fault, because he "had taken [Goodwin] out of the kitchen, taken her apron off, and put a robe on her." Judge Corrigan testified that he was joking when he made this remark. Judge Hoester testified that he knew that Judge Corrigan often made such remarks in jest but on this occasion was not sure whether the remark was intended as a joke or not.
 
 
 10
 II. The Jury Verdict Under 42 U.S.C. Sec. 1983.
 
 
 11
 Judge Corrigan attacks the jury verdict under Sec. 1983 on the following grounds: (1) the District Court committed reversible error by incorrectly instructing the jury that the burden of persuasion was on the defendant; (2) the District Court erred in not instructing the jury on the defense of good-faith immunity; (3) the claim of sex discrimination is not supported by sufficient evidence; and (4) the award of punitive damages is not supported by sufficient evidence and is contrary to the law.[5]
 
 
 12
 A. The burden of persuasion.
 
 
 13
 During the plaintiff's closing argument counsel began to say that the defendant must prove his defense. Counsel for Judge Corrigan objected to this statement as a misstatement of the law. The following dialogue then occurred (Tr. 486-87).
 
 
 14
 THE COURT: The complication, of course, is that under the existing law the burden on any defendant only becomes a burden if the fact finder finds that the plaintiff has proven a prima facie case of discrimination and that's always subject--because jurors are not accustomed to handling these kinds of cases but under the law, the plaintiff must first make a prima facie showing. Then if the plaintiff makes that prima facie showing the burden shifts to the defendant to show that he did not act in a discriminatory way.
 
 
 15
 MR. PADBERG: Excuse me, Judge. May I make a record on that, please?
 
 
 16
 THE COURT: All right. I tell you what we might do. Let me--let me do it this way. I'll sustain the objection to the statement made by Mr. Newman here and we will proceed and you will hear the instructions of the Court. Disregard my oral explanations because I think the instructions make clear to you where the burden and the shifting burden is.
 
 
 17
 Defense counsel then made no further objection.
 
 
 18
 The order and burdens of proof laid down by the Supreme Court for Title VII cases apply also to cases of race and sex discrimination in employment brought under 42 U.S.C. Secs. 1981 and 1983. See, e.g., Person v. J.S. Alberici Constr. Co., 640 F.2d 916, 918 (8th Cir.1981) (claim of racial discrimination under Sec. 1981). The burden of persuasion remains at all times on the plaintiff. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 1093-95, 67 L.Ed.2d 207 (1981). The District Court's initial statement to the jury that the defendant might have "to show that he did not act in a discriminatory way" was therefore mistaken. But the Court immediately sustained counsel's objection and instructed the jury to disregard "my oral explanations." Appellant argues that this admonition was insufficient to cure the error because the Court still left the impression that when it instructed the jury formally it would have something to say about a "shifting burden." We disagree. The Court's statement, taken as a whole, directed the jury to govern itself by what it would hear in the instructions that would be given after all closing arguments had concluded. When those instructions were read, no objection was made on burden-of-proof grounds.[6] We are not persuaded that the District Court's momentary lapse worked any actual prejudice to the defendant.
 
 
 19
 B. Good-faith immunity under Sec. 1983.
 
 
 20
 Judge Corrigan argues that he was acting in "good faith" and hence is immune from damages for sex discrimination under the doctrine of "qualified immunity." Alternatively, he argues that the District Court erred in refusing to give an instruction on "good faith" immunity.
 
 
 21
 We reject this argument and hold that the defense of "good faith" or qualified immunity is not available in this case. By definition, there can be no liability in such an action unless the plaintiff shows that the defendant intentionally discriminated against her because of her sex. Cf. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977) (disparate-treatment action under Title VII). If the jury finds that intentional discrimination has occurred, and if, as in this case, the evidence is sufficient to support that finding, "good faith" on the part of the defendant is logically excluded. This result is even more strongly indicated after the Supreme Court's recent reformulation of qualified-immunity doctrine in Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Under Harlow, a qualified-immunity defense is available if the defendant's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Ibid. The right to be free of invidious discrimination on the basis of sex certainly is clearly established, and no one who does not know about it can be called "reasonable" in contemplation of law.
 
 
 22
 In Rodriguez v. Board of Education of Eastchester Union Free School Dist., 620 F.2d 362, 366-67 (2d Cir.1980), it is said, in the context of an action for deliberate sex discrimination under Sec. 1983, that good faith would be a defense against liability for damages. With all deference to the Second Circuit, we are at a loss to understand such a holding. In our view, the proper rule is stated in Flores v. Pierce, 617 F.2d 1386, 1391-92 (9th Cir.), cert. denied, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980), decided, as it happens, five days after Rodriguez. The Flores Court said, in language we adopt as our own:
 
 
 23
 No official can in good faith impose discriminatory burdens on a person or group by reason of a racial or ethnic animus against them. The constitutional right to be free from such invidious discrimination is so well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it. Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958).
 
 
 24
 This statement is just as applicable to cases of invidious sex discrimination as it is to cases of racial or ethnic discrimination. It was not error for the District Court to refuse to give an instruction on the defense of good-faith or qualified immunity.
 
 
 25
 C. Sufficiency of the evidence.
 
 
 26
 Judge Corrigan argues that substantial evidence does not support the jury's finding that he discriminated against Goodwin on the basis of sex. In reviewing the evidence, we are persuaded that Goodwin did present substantial evidence of discrimination.
 
 
 27
 As direct evidence of discrimination, she presented evidence of two statements that Judge Corrigan made which can reasonably be interpreted to indicate a bias against women. She also presented evidence that he routinely made such statements. The first statement occurred just three days before Judge Corrigan made his decision to transfer Goodwin to the legal department. He said, "This court will never run well so long as there are women in charge."[7] While the judge claims that he made this statement in jest, the jury could well have disbelieved him or have felt that jokes like these indicate a bias against women. At about the time this suit was filed, Judge Corrigan said to Judge Hoester that the litigation was Judge Hoester's fault because he "had taken [Goodwin] out of the kitchen, taken her apron off, and put a robe on her."[8] Whether made in jest or not, this statement reflects certain attitudes of Judge Corrigan toward women which might motivate him to treat them differently. Also, Goodwin produced evidence that Judge Corrigan repeatedly needled Holly Jaeger with sexist remarks that upset her. In addition, Goodwin testified that Judge Corrigan accused her of violating the constitutional rights of juveniles although the judge took no steps to determine the correctness of the information on which he based his accusation. In his own defense, Judge Corrigan did not offer any explanation for his accusation. Further, the judge stated that he based his decision to transfer Goodwin on complaints he had received, but again he made no efforts himself to verify their accuracy or investigate the basis of the complaints. The jury may have interpreted this as indicating the predisposition of Judge Corrigan to believe that women were not good judicial officers.
 
 
 28
 As to evidence of pretext, Goodwin presented some evidence to rebut the defendant's evidence that Donis was better qualified as a hearing officer. Judge Corrigan essentially claimed that Goodwin was inferior in two respects: (1) her legal ability; (2) her conduct in running hearings in the manner of a social worker. As to her legal abilities, the three juvenile judges prior to Judge Corrigan all roundly praised Goodwin's performance, including her legal abilities. Judge Hoester testified that during his term Goodwin "did a fine job." Judge Lasky likewise testified that during his tour in juvenile court from 1974-76, Goodwin was "a good lawyer," and "an excellent hearing officer." His successor, Judge Edwards, testified that he observed Goodwin on numerous occasions, including the trial of cases, and that she was an "excellent hearing officer" and had a "good knowledge of the law." Further, Goodwin had approximately five years more experience as a hearing officer than Donis. While several witnesses stated that they thought Goodwin's legal abilities were lacking, the jury was free to disbelieve them.
 
 
 29
 Appellant also argues that the attorney position to which he transferred plaintiff was much more desirable than the hearing-officer position she was forced to leave. The hearing-officer position was to be reduced to handling mainly traffic cases and was in any case to be phased out altogether as soon as the Legislature enacted a desired juvenile-court reorganization. The argument essentially is that Judge Corrigan did Goodwin a favor by transferring her into a permanent position as staff attorney, and that she therefore has no cause to complain. The jury, we suppose, might have accepted such an argument, but it was hardly obliged to do so. Goodwin apparently preferred being a judge for a year to being an assistant prosecuting attorney indefinitely. The jury was within its rights in finding that this preference could not be defeated by invidious discrimination.
 
 
 30
 D. Punitive damages.
 
 
 31
 Judge Corrigan argues that the award of $1,000 in punitive damages must be set aside because no evidence supports such damages, because such damages cannot be given without a showing of actual damages, and because the amount of punitive damages is excessive in relation to the actual damages.
 
 
 32
 We hold that there is sufficient evidence to support the jury's award of punitive damages. This Court has stated that "[p]unitive damages may ... be awarded in civil rights actions where the defendant exhibits oppression, malice, gross negligence, willful or wanton misconduct, or a reckless disregard for the civil rights of the plaintiff." Guzman v. Western State Bank of Devils Lake, 540 F.2d 948, 953 (8th Cir.1976). In Smith v. Wade, --- U.S. ----, ----, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983), the Supreme Court stated that punitive damages may be obtained under Sec. 1983 when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Here the statements made by Judge Corrigan could support a jury's finding of intentional or reckless indifference to Goodwin's right to be free from sex discrimination. Juries are uniquely suited to make this kind of moral judgment.
 
 
 33
 As to the claim that punitive damages may not be awarded unless actual damages are proved, this is not the law. See Merritt v. De Los Santos, 721 F.2d 598, 601-02 (7th Cir.1983); Ryland v. Shapiro, 708 F.2d 967, 976 (5th Cir.1983); Wilson v. Taylor, 658 F.2d 1021, 1033 (5th Cir.1981); cf. Carey v. Piphus, 435 U.S. 247, 257 n. 11, 266, 98 S.Ct. 1042, 1049 n. 11, 1053, 55 L.Ed.2d 252 (1978) (implies punitive damages may be awarded even if only nominal damages shown). As to the claim that the punitive damages must be set aside because they are excessive in relation to the actual damages, we see no merit to this argument in cases where only nominal damages are given. If the amount of punitive damages must always depend on actual damages, it would follow that no punitive damages could be given in cases involving only nominal damages. As just noted, this is clearly not the law. Further, we think the jury's award of $1,000 was not unreasonable under the circumstances and will serve to deter future conduct in violation of civil rights.
 
 
 34
 III. The Title VII Claim.
 
 
 35
 The Circuit Court appeals the District Court's Title VII order on several grounds: (1) that the plaintiff could not sue under 42 U.S.C. Sec. 2000e because she was an immediate adviser to an elected official; (2) that the District Court erred in shifting the burden of proof to the defendant; and (3) that the Circuit Court has judicial immunity from this suit. We discuss each argument in turn.
 
 
 36
 A. Classification of Goodwin as an "employee" under 42
 
 
 37
 U.S.C. Sec. 2000e(f).
 
 
 38
 Title 42 U.S.C. Sec. 2000e(f) defines "employee" in pertinent part as follows:
 
 
 39
 The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.[9]
 
 
 40
 The Circuit Court argues that Goodwin was an immediate adviser to an elected official and thus does not qualify to sue under Title VII. We reject this argument. The legislative history of this exemption shows that it is meant to apply to those employees who are in "a close personal relationship" with the official. 118 Cong.Rec. 4492-93 (1972) (remarks of Sen. Williams); Gearhart v. Oregon, 410 F.Supp. 597, 600-01 (D.Or.1976); Marafino v. St. Louis County Circuit Court, 537 F.Supp. 206, 211 (E.D.Mo.1982), aff'd per curiam on other grounds, 707 F.2d 1005 (8th Cir.1983). Here the testimony clearly showed that Judge Corrigan and Goodwin had very few personal contacts. Thus the job did not entail the sort of personal relationship contemplated in the exception. The hearing-officer job itself required Goodwin to assert her independent judgment free from any direction from others, including Judge Corrigan. While it can be said that Goodwin offered "advice" to Judge Corrigan in the sense of providing recommendations for the disposition of cases, this "advice" was of a formal, detached nature, from one judicial officer to another. Any doubt that might exist that Goodwin functioned as an "immediate adviser" is resolved by the explicit Congressional intent that "this exemption shall be construed narrowly." Joint Explanatory Statement of Managers at the Conf. on H.R. 1746, 92d Cong., 2d Sess., 1972 U.S.Code Cong. & Ad.News 2179, 2180 (1972).[10]
 
 
 41
 B. The burden of proof under Title VII.
 
 The District Court's opinion states:
 
 42
 After Goodwin's prima facie case is established, the burden shifts to the Circuit Court to show a nondiscriminatory purpose for the selection of Donis over Goodwin or that Goodwin was not treated differently from the other persons available for the hearing officer position.
 
 
 43
 Goodwin v. Circuit Court of St. Louis County, 555 F.Supp. 658, 662 (E.D.Mo.1982).
 
 
 44
 This statement of the law is incorrect. In Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court expressly stated that the only burden that shifts to the employer-defendant in Title VII actions is the burden of production; the burden of persuasion on the issue of discrimination remains on the plaintiff at all times.[11] To correct this error, we remand the case to the District Court for certification of what its finding would have been had it properly placed the burden of persuasion on the plaintiff.
 
 
 45
 C. Judicial immunity of the Circuit Court.
 
 
 46
 The Circuit Court argues that it is cloaked with judicial immunity because the transfer of Goodwin to the legal department was an act in the official judicial capacity of Judge Corrigan. We disagree. The decision of whom to retain as a hearing officer is not an official judicial act. It is an administrative personnel decision. See Marafino v. St. Louis County Circuit Court, supra, 537 F.Supp. at 211.[12]
 
 IV. Conclusion
 
 47
 In summary, we affirm the judgment entered against Judge Corrigan under 42 U.S.C. Sec. 1983. The judgment against the Circuit Court under Title VII is vacated, and the cause remanded to the District Court with directions to make a new finding on the issue of discrimination vel non, this time having clearly in mind that the burden of persuasion on that issue remains at all times on the plaintiff. We ask the District Court to make this new finding as soon as reasonably practicable and to certify it to this Court. In the meantime, we will retain jurisdiction of the appeal in order to review the District Court's new finding, after it is certified to this Court, under the clearly-erroneous rule of Fed.R.Civ.P. 52(a). If this issue is ultimately resolved in the plaintiff's favor, we will then consider the appeal of the third-party defendant St. Louis County from the judgment entered against it on the third-party claim of the Circuit Court. If, on the other hand, the issue of discrimination is ultimately resolved in favor of the defendant Circuit Court, the appeal of the County will be moot.
 
 
 48
 Affirmed in part, vacated in part, and remanded.
 
 
 49
 BOWMAN, Circuit Judge, concurring in part and dissenting in part.
 
 
 50
 I agree that the district court erroneously shifted the burden of persuasion in rendering its judgment against the Circuit Court of St. Louis County. To that extent, I concur in our Court's disposition of the Title VII claim. With respect to our Court's affirmance of the judgment entered against Judge Corrigan under 42 U.S.C. Sec. 1983, however, I dissent because I do not view the evidence as being sufficient to support the jury's verdict against Judge Corrigan. The real issue is not whether Judge Corrigan has or ever had a bias against women. Rather, the issue is whether he made a decision adverse to Goodwin on the basis of her sex. In my opinion, the evidence falls woefully short of showing that he did, and accordingly the verdict in Goodwin's favor should not be allowed to stand.
 
 
 51
 The hearing officer positions, one held by Goodwin and one held by Donis, were to be eliminated. Goodwin has not alleged that the decision to eliminate those positions flowed from improper motives or was in any way unlawful. With that decision already made, Judge Corrigan then had to decide which of the two hearing officers would be kept on for a few months in a temporary hearing officer position and which of them would be transferred, without any reduction in pay or benefits, to a permanent position on the legal staff. He consulted with an executive committee of juvenile court officials, one of whom was a woman. Although this committee was unanimous in its view that Donis was the stronger of the two candidates, the members were evenly divided on the question of which candidate should be assigned to which position.[1] Judge Corrigan's decision to retain Donis in the temporary hearing officer position was in no way inconsistent with the views of the committee.
 
 
 52
 Judge Corrigan also was aware that the duties of the temporary hearing officer would be restricted mainly to hearing juvenile court traffic cases. He knew that Donis had considerable recent experience with such cases and that Goodwin did not.[2] Beyond that, Judge Corrigan had not received any criticism of Donis's performance, and he knew that Donis's work as a hearing officer was well regarded. On the other hand, Judge Corrigan had received adverse comments regarding Goodwin's performance as a hearing officer. The opinion of the Court misperceives the significance of this criticism of Goodwin's legal abilities when it suggests that the jury was free to disbelieve the witnesses who stated that they thought Goodwin's legal abilities were lacking. The ultimate view of a jury concerning the credibility of Goodwin's critics does not matter; what matters is that Judge Corrigan had such criticism before him, that he did not find it unbelievable, and that it was part of the totality of information on which he based his decision. Furthermore, Judge Corrigan had had the opportunity to review findings of fact, conclusions of law, and recommendations made by Goodwin in numerous cases. He personally had evaluated her work as a hearing officer and had developed misgivings about it.
 
 
 53
 The only evidence that even remotely could be construed as an indication of unlawful discrimination on the part of Judge Corrigan consists of two remarks he made.[3] One of the remarks was jokingly made in the context of a discussion concerning a decision made by Corinne Richardson, head of the legal department. The other remark, which occurred during an en banc meeting of the circuit court, was made more than one year after Judge Corrigan transferred Goodwin. Given the context of the first remark and the time frame of the second, the relevancy of this evidence becomes, at best, highly questionable. What we are left with are two highly prejudicial remarks of minimal probative value, evidence of which could well have been excluded by the district court in the exercise of its sound discretion. See Fed.R.Evid. 403.
 
 
 54
 A strained interpretation of this evidence might lead one to infer that Judge Corrigan was, in general, biased against women and that he acted upon such a bias. That interpretation is, however, illogical. If in fact Judge Corrigan's decision was motivated by impermissible bias, one would think that he would have placed Goodwin, rather than Donis, in the temporary position. The action he took was totally inconsistent with such a bias or with a desire to rid the court of women. Quite to the contrary, the record establishes by uncontradicted testimony that Judge Corrigan consistently made fair and unbiased decisions affecting female employees of the court, that he hired women for positions with the court, and that on at least one occasion he restructured a position to meet the needs of a female staff member for part-time employment. This is hardly the record of a man driven by a bias against women.
 
 
 55
 Moreover, even if the evidence could be read as indicative of a general bias, it would not prove the specific act of which Goodwin complains. There is a vast difference between a general bias and an act of intentional discrimination. Unless the onset of an Orwellian nightmare is closer at hand than most of us have realized, in our society the law still punishes bad deeds, not bad thoughts or the expression of unfashionable opinions. Expression may color conduct or explain motive, where motive is in question, but expression that at most tends to show a general bias toward a protected group cannot be allowed to serve as a total substitute for direct proof of unlawful discrimination. In this case there is a total absence of such direct proof. What has happened is that Judge Corrigan has been found guilty because of the atmospherics created by his remarks, not because Goodwin properly carried her burden of persuasion on the issue of intentional discrimination.
 
 
 56
 The result of Judge Corrigan's decision was Goodwin's transfer to a permanent position on the legal staff of the court, at no reduction in pay or benefits. Donis stayed in the one remaining hearing officer position, handling juvenile traffic cases until, as anticipated, the position was phased out approximately a year later. Donis then was out of a job with the court. I have great difficulty in viewing this as a decision adverse to Goodwin. By any objective standard, the decision Judge Corrigan made was favorable to Goodwin. Her claim would be a much more sympathetic and understandable one if in fact she had been retained in the temporary, soon-to-be-phased-out hearing officer position. Indeed, if Judge Corrigan had decided to put Goodwin in the temporary position she now claims to have wanted, it is hard to imagine that she would not have attacked that decision on grounds of sexual bias. It troubles me deeply that we are sustaining a judgment against Judge Corrigan when it appears likely that either of the actions he could have taken regarding Goodwin's employment status would have subjected him to the same attack and, under the decision of the Court, to the same liability. This strikes me as being manifestly unjust.
 
 
 57
 In short, Goodwin's evidence cannot reasonably be viewed as sufficient to establish her case. Even under this Court's stringent standards, see, e.g., Bauer v. Norris, 713 F.2d 408 (8th Cir.1983), Judge Corrigan should have been granted a directed verdict or a judgment notwithstanding the verdict.
 
 
 58
 For the reasons indicated above, I would reverse the Sec. 1983 judgment against Judge Corrigan. Furthermore, because evidence insufficient to support a sex discrimination claim under Sec. 1983 likewise is insufficient to support the same claim under Title VII, the Title VII judgment against the circuit court should be reversed for insufficiency of the evidence as well as on the ground set forth in the opinion of the Court.
 
 
 
 [1]
 Count I of the complaint, based on Title VII, named both the Circuit Court and Judge Corrigan as defendants. Judge Corrigan's motion to dismiss, on the ground that the plaintiff was employed by the Circuit Court, not by him personally, was granted. Goodwin v. Missouri, No. 80-1340 C (2), slip op. p. 3 (E.D.Mo. Feb. 27, 1981) (Nangle, J.) (Designated Record (D.R.) at 37). The Title VII count went to trial against the Circuit Court only
 Count II of the complaint, based on Sec. 1983, also named both the Circuit Court and Judge Corrigan as defendants. The Circuit Court's motion to dismiss, on the ground that as an arm of the State it is immune under the Eleventh Amendment, was granted. Goodwin v. Circuit Court of St. Louis County, Missouri, No. 80-1340 C (2), slip op. pp. 7-8 (E.D.Mo. Dec. 4, 1981) (Nangle, J.) (D.R. at 83-84). The Sec. 1983 count went to trial against Judge Corrigan only.
 The two counts were tried at the same time, the Title VII count to the court, and the Sec. 1983 count to a jury.
 Plaintiff does not ask us to review the orders of dismissal just described.
 
 
 [2]
 The Hon. Clyde S. Cahill, United States District Judge for the Eastern District of Missouri
 
 
 [3]
 No back pay was awarded, because plaintiff was transferred to an attorney position that paid no less than the salary of hearing officers. Reinstatement was denied because the hearing-officer position no longer exists. Plaintiff has not appealed from these rulings
 
 
 [4]
 Another witness testified that Judge Corrigan said, "This Court won't run smoothly until we get rid of these g--d--- women."
 
 
 [5]
 Judge Corrigan also argues that the court erred in submitting the case to the jury because it lacked jurisdiction because of plaintiff's failure to read a stipulation containing jurisdictional facts into the record. This argument is without merit. A stipulation on file with the court is fully adequate to give the court Title VII jurisdiction. Defendant cites no law which even suggests that the stipulation must be read out loud at the trial
 
 
 [6]
 We have not been supplied with a copy of the instructions as read. But the transcript does show the absence of relevant objections, and we feel sure counsel would have told us if the instructions as given had said anything about "shifting burdens."
 
 
 [7]
 Judge Corrigan argues that the District Court erred in admitting this statement because it is not relevant although it is highly prejudicial. The statement is clearly relevant to determining the judge's motives, directly concerning as it does the question of women in the court, and coming just three days prior to the decision to transfer Goodwin. In addition, defendants made no objection when two of Goodwin's witnesses testified about this statement on direct examination
 
 
 [8]
 Judge Corrigan again argues that the prejudicial value of this evidence exceeds its relevance. We find this argument equally unconvincing. The statement, although made after the alleged discriminatory act, may reflect the attitude of the Judge toward women, even if it was made in jest. The jury has the responsibility of determining what weight to give to the statement
 
 
 [9]
 As Judge Van Sickle has remarked, this definition is not an example of outstanding draftsmanship, "being a definition subject to an exception which exception is subject to an exception." Howard v. Ward County, 418 F.Supp. 494, 502 (D.N.D.1976)
 
 
 [10]
 We note also the District Court's holding that "plaintiff was not hired by Judge ... Hoester to be on his or any other judge's personal staff but instead was hired as a county employee." Goodwin v. Circuit Court of St. Louis, Missouri, No. 80-1330 C (2), slip op. p. 6 (E.D.Mo. Dec. 4, 1981) (Nangle, J.) (D.R. 82). This holding is based on the District Court's understanding of the statutes and judicial practices of its own State. On such questions we normally defer to the decisions of the district courts
 Our holding that Goodwin was not an "immediate adviser" makes it unnecessary to decide the further question whether Missouri Circuit Judges, who are initially appointed by the Governor and are thereafter retained unless the people at periodic elections vote otherwise, but who do not face named opposing candidates at the polls, are "elected to public office" within the meaning of Sec. 2000e(f). Compare Goodwin v. Circuit Court of St. Louis County, Missouri, supra, slip op. p. 6 (D.R. 82) (Nangle, J.) (implying that Circuit Judges are not "elected" for this purpose), with Marafino v. St. Louis County Circuit Court, supra, 537 F.Supp. at 211 (Filippine, J.) (assuming that Circuit Judges are "elected").
 
 
 [11]
 Ordinarily, when Sec. 1983 and Title VII claims are tried jointly, the Sec. 1983 theory to the jury and the Title VII theory to the court, a jury verdict on the issue of discrimination would collaterally estop the parties with respect to that issue on the Title VII claim. See, e.g., Sisco v. J.S. Alberici Constr. Co., 655 F.2d 146, 151 (8th Cir.1981), cert. denied, 455 U.S. 976 (1982). We decline to affirm the Title VII judgment on that basis in the peculiar circumstances of this case. No one has argued this application of estoppel by judgment, either here or below. Counsel for all parties seem to have assumed that the court would make its own finding on the issue of discrimination, whichever way the jury verdict went on the Sec. 1983 case. Therefore counsel for the Circuit Court felt no real incentive to make independent objections to or requests for jury instructions. Res judicata is not an inflexible dogma. It would be unfair to apply it against the Circuit Court here
 
 
 [12]
 For the same reasons we also reject Judge Corrigan's claim to judicial immunity from suit under Sec. 1983
 
 
 [1]
 The committee members had differing views as to the relative importance of the two positions, not as to the strengths of the two candidates. The two committee members who voted to retain Goodwin as the hearing officer did so because they wanted the stronger candidate, Donis, placed on the permanent legal staff. The two committee members who voted to retain Donis as the hearing officer did so because they believed it was necessary to fill that position with the stronger candidate
 
 
 [2]
 While Goodwin had heard traffic cases in her early years of service as a hearing officer, 90 per cent of her case docket since 1976 had been abuse and neglect cases
 
 
 [3]
 The text of these remarks is set forth supra in section II.C. of the Court's opinion