Pedro GARZA and Constance Garza, Husband and Wife, Appellees,

v.

CITY OF OMAHA, Dale Heston, Harold Irving and Omar Kauffeld, Appellants.

Nos. 85–2461, 85–2499.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 9, 1987.

Decided March 25, 1987.

**554**

Timothy K. Kelso, Omaha, Neb., for appellants.

Steven E. Achelpohl, Omaha, Neb., for appellees.

Before McMILLIAN and FAGG, Circuit Judges, and WOODS,* District Judge.

* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

HENRY WOODS, District Judge.

The City of Omaha appeals from a final judgment of the District Court of Nebraska entered in conformity with a jury's award of damages to the plaintiff, Pedro Garza, on claims brought under 42 U.S.C. §§ 1983 and 1985(3), together with a pendent state claim for negligence. Garza cross-appeals from the district court's denial of his claims brought under Title VII, 42 U.S.C. § 2000e *et seq.*, which had been tried to the court simultaneously, and from the district court's order setting aside the jury's award of punitive damages on the § 1983 claim. The City of Omaha argues that the jury's verdict was not supported by the evidence and was contrary to law. Garza contends that the evidence supported the jury verdict and that the jury's findings of discrimination collaterally estopped the City on that issue, thereby precluding the district judge from inconsistent findings on the Title VII claims.

Garza, a Mexican American, claims that solely based on his national origin he was wrongfully demoted, was not promoted to jobs for which he was qualified and was wrongfully discharged by his former employer, the City of Omaha. Garza brought this action against the City under 42 U.S.C. §§ 1983 and 1985(3), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the tort law of Nebraska. A jury awarded Garza $50,056 for actual damages and $16,500 for emotional distress under §§ 1983 and 1985(3). The jury also assessed punitive damages of $4,000 against three of the defendants in their individual capacities and, additionally, awarded $18,000 in compensatory damages on the state negligence claim. The district judge entered judgment for the City of Omaha on the Title VII claim, concluding that Garza had not established a prima facie case of discrimination. In his final order the district judge, having reserved ruling at the close of trial, also directed a verdict for the City on the issue of punitive damages, thereby setting aside the jury award.

Both the City of Omaha and Garza appeal. We affirm the judgment entered upon the jury verdict on the § 1983 and § 1985(3) claims. We reverse the district court's order directing a verdict on the issue of punitive damages and remand with directions to enter judgment on the jury verdict. As to the Title VII claim, we hold that the City was collaterally estopped on the issue of discrimination by the jury's verdict on the § 1983 claim. Accordingly, we reverse the judgment of the district court, remand for a determination of damages and attorney's fees and direct that judgment be entered on the Title VII claim in favor of the plaintiff.

## I. THE FACTUAL BACKGROUND

Garza was first employed by the City of Omaha in 1974 as a seasonal laborer. Beginning in 1975, Garza was hired as an Automotive Equipment Operator I (AEO I). Although performing the work of an AEO I, Garza was classified and paid as a laborer. Garza testified that a white man was hired "off the street" for the AEO I position which Garza rightfully deserved. He filed a complaint with the Equal Employment Opportunity Commission (EEOC) and, as a result of an agreement reached between the EEOC and the City in 1976, Garza was compensated for his accumulated salary deficiency and reclassified as an AEO I.

Garza testified regarding a supervisor's practice of distributing paychecks to minorities and non-minorities at different times. White employees were paid at 9:30 a.m., but minorities were not paid until day's end because his supervisor Pettigrew believed that the minorities would leave after receiving their checks. Pettigrew ordered Garza to sign a false statement that a black employee struck Pettigrew and took several checks from him following Pettigrew's refusal to pay the black employee before day's end. According to Garza, Pettigrew and his boss, Mr. Wiezorek, said they needed Garza's statement to "get rid of the nigger." For Garza's refusal to sign the statement and testify against the black employee, he was suspended for "gross insubordination." Garza's complaint precipitat-

ed an investigation of the Parks and Recreation Department by the Mayor's office.

The Director of the Office of Management and Budget, who investigated the complaint on behalf of the Mayor's office, testified that Wiezorek, the district supervisor, had an attitude that was racist in nature in that he could not stand to be questioned by a minority. The Mayor's investigation concluded that Garza was not guilty of any insubordination, in part, because Wiezorek and Pettigrew could not get their stories straight. He ordered the Department to reinstate Garza. Wiezorek, who received a reprimand from the Mayor's office, testified that he had only been acting as ordered by his boss Dale Heston, the supervisor of the Parks and Recreation Department.

Numerous other incidents were related which depict a pattern of discriminatory behavior and retaliation for Garza's assertion of his civil rights. Garza was the only employee required to carry a paper stating he was not entitled to overtime and was the only employee required to request job assignments in writing. Several non-minority persons were "hired off the street" for full-time employment while Garza, then a seasonal employee, had his application pending and had a good work record. Racial epithets and slurs were commonly used by management and supervisory personnel in reference to Garza. One of Garza's supervisors kept a "black book" on him. The City consistently refused to compensate Garza under its benefit plan for injuries received on duty and ignored Garza's restriction to "light duty". Finally, Garza was terminated for absenteeism even though a physician determined Garza was unable to work due to on-the-job injuries.

## II. ISSUES

### A. The Jury Verdict under 42 U.S.C. § 1983

The City of Omaha attacks the jury's verdict under § 1983 arguing the verdict was not supported by the evidence and was contrary to law—since the officials named as defendants were not acting under "color

of law." These arguments are wholly without merit.

■■ A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor; however, local governments like every other § 1983 "person," may be sued for constitutional deprivations visited pursuant to governmental "custom." It is not necessary that such a custom receive formal approval through official decision-making channels. *Monell v. Dept. of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). A discriminatory custom may be established by evidence that the practices of state officials are so permanent and well settled as to carry the force of law. *Id.* Here there was evidence that the disparate treatment of which Garza complained took place over a period of several years. It was both instigated and ratified by persons in the highest positions of management and subordinate supervisory personnel. Upon instructions to which the City did not object, the jury found, in answer to an interrogatory, that the discrimination was the result of a custom of the City of Omaha. The evidence was sufficient for the jury to conclude that the discrimination was so permanent and well settled as to constitute a custom with the force of law.

■■ At the close of the trial, the district judge reserved ruling on the motions of three individual defendants for a directed verdict on the issue of punitive damages. These defendants were employed by the City in various supervisory capacities. The jury's award of $4,000 against them was set aside by the final order of the district court. We reverse the order of the district court and remand with directions to enter judgment on the jury verdict.

■■ In a § 1983 action, punitive damages may be awarded where the defendant exhibits oppression, malice, gross negligence, willful or wanton misconduct, or reckless disregard for the civil rights of the plaintiff. *Goodwin v. Circuit Court of St. Louis County, Mo.,* 729 F.2d 541, 547 (8th Cir.1984), *cert. denied,* 469 U.S. 828, 105 S.Ct. 112, 83 L.Ed.2d 55 (1984); 469 U.S. 1216, 105 S.Ct. 1194, 84 L.Ed.2d 339 (1984);

in accord with *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). The question—whether the defendants exhibited such conduct—necessarily requires the type of moral judgment uniquely suited to the jury. *Goodwin, supra,* at 548. Declining the City's invitation to substitute our judgment for that of the jury, we hold that the evidence is sufficient to support the jury's award of punitive damages. This cause is remanded to the district court with directions to enter judgment in conformity with the jury's verdict.

**B. The Jury Verdict under 42 U.S.C. § 1985(3)**

■ The City of Omaha, a municipal corporation, asserts that Garza did not prove the requisite elements of a conspiracy to deprive him of his civil rights under § 1985(3) because of the general rule that a corporation cannot conspire with itself. *See Runs After v. United States,* 766 F.2d 347 (8th Cir.1985). In its brief, however, the City cites an exception to the general rule that is fatal to its position. While it is true that a corporation cannot conspire with itself, an intracorporate conspiracy may be established where individual defendants are also named and those defendants act outside the scope of their employment for personal reasons. *E.g., Cross v. General Motors Corp.,* 721 F.2d 1152 (8th Cir.1983).

Several of the City's officials and officers were named as defendants both in their official and individual capacities. Moreover, the jury selectively found only two of the individual officers of the Parks and Recreation Department, Heston and Kauffeld, liable for conspiracy to deprive Garza of his federally protected rights. There was testimony that Heston, the Department Supervisor, had ordered Weizorek, a subordinate supervisor, to suspend Garza on one occasion. The suspension was later found to be groundless. Furthermore, the evidence summarized above lends itself to an inference that the discriminatory treatment which Garza received was instigated or ratified by Heston.

With respect to Kauffeld, the record is replete with evidence that Kauffeld bore a personal animosity toward Garza. When Garza was injured while doing heavy lifting, Kauffeld refused to let him see a doctor and ordered Garza to continue working. Garza was later hospitalized for complete bed rest. There was also testimony that Kauffeld did not want Garza around his shop under any circumstances and that Kauffeld commonly referred to Garza, among other things, as a "dirty Mexican." Clearly, the jury could have concluded from this and other evidence presented that Heston and Kauffeld were acting to further their personal bias.

■ The City next argues that even if the requisite agreement was established under § 1985(3), Garza's claim of conspiracy is barred because it presents an allegedly unlawful employment practice under Title VII. *See Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). *Novotny* holds that § 1985(3) may not be used to redress violations of Title VII, because § 1985(3) is merely a remedial statute which provides a civil cause of action when some otherwise defined federal right is breached in the manner defined. We find *Novotny* to be inapposite to the case at bar. Garza, in his complaint, sought redress under § 1983 for violations of his constitutional rights of equal protection and due process of law. *Novotny* holds only that § 1985(3) cannot be used to redress violations of Title VII; it does not hold that § 1985(3) cannot be used to redress constitutional violations. Accordingly, we affirm the judgment on the § 1985(3) claim.

## C. The State Negligence Claim

■ It is undisputed that the defendant Harold Irving, a low level supervisor, without provocation or warning, grasped Garza around the neck while placing his knee in Garza's back. As to Irving's motive for this action, the testimony was conflicting. Garza claims that Irving was demonstrating the way supervisors used to discipline minorities. Others claimed that Irving was merely demonstrating a hold by which persons could be subdued. Testimony by a physician indicated that the incident could have aggravated Garza's preexisting back injury. Manifestly, it is within the province of the jury to determine whether Irving's conduct constituted negligence and the amount of damages proximately caused thereby. The jury found Irving to be negligent in his conduct and assessed damages of $18,000. We affirm.

## D. The Title VII Claim

■ Notwithstanding the jury's finding of a discriminatory custom by the City of Omaha, the district judge ruled that Garza did not produce evidence sufficient to establish a prima facie case under Title VII. Accordingly, the district court entered judgment on the Title VII claim in favor of the City. We reverse.

This court has earlier noted that,

[o]rdinarily, when § 1983 and Title VII claims are tried jointly, the § 1983 theory to the jury and the Title VII theory to the court, a jury verdict on the issue of discrimination would collaterally estop the parties with respect to that issue on the Title VII claim.

*Goodwin v. Circuit Court of St. Louis County, Mo.*, 729 F.2d 541, 549 n. 11 (8th Cir.1984), *cert. denied*, 469 U.S. 828, 105 S.Ct. 112, 83 L.Ed.2d 55 (1984); 469 U.S. 1216, 105 S.Ct. 1194, 84 L.Ed.2d 339 (1984).

Given the preclusive effect of collateral estoppel which must be accorded to the jury verdict, the district court was without power to render a judgment on the Title VII claim inconsistent with the jury's finding of discriminatory intent and custom on the § 1983 claim. *See Sisco v. J.S. Alberici Construction Co.*, 655 F.2d 146, 151 (8th Cir.1981), *Cert. denied*, 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982); *Lartius v. Iowa Dept. of Transportation*, 705 F.2d 1018 (8th Cir.1983). Significantly, the district court did not decide that there was not substantial evidence to support the jury's finding of discriminatory custom. To the contrary, the district court denied the City's motion for judgment *n.o.v.*

**558**

Accordingly, we reverse the judgment of the district court on the Title VII claim, remand for a determination of damages and direct that judgment be entered in favor of the plaintiff.

**E.   Attorney's Fees**

The plaintiff prayed for a reasonable attorney's fee as the prevailing party under Title VII, 42 U.S.C. § 2000e–5(k).   We remand this matter to the district court for resolution.

**III.   CONCLUSION**

In summary, we affirm the judgment entered upon the jury verdict in the § 1983 and § 1985(3) claims.   We reverse that part of the district court's order directing a verdict on the issue of punitive damages and remand with directions to enter judgment upon the jury verdict.   As to the Title VII claim, we hold that the City was collaterally estopped on the issue of discrimination by the jury's verdict on the § 1983 claim and, accordingly, we reverse the judgment of the district court, remand for a determination of damages and attorney's fees, and direct that judgment be entered on the Title VII claim in favor of the plaintiff.