John WAYS, Sr., Plaintiff,

v.

CITY OF LINCOLN; City of Lincoln Police Department; Dean Leitner, City of Lincoln Chief of Police; Arthur Bandars; and John Hewitt, Defendants.

No. CV87–L–30.

United States District Court,
D. Nebraska.

March 4, 1988.

On Motion For New Trial June 17, 1988.

Beverly Evans Grenier, Lincoln, Neb., for plaintiff.

John C. McQuinn, Asst. City Atty., Lincoln, Neb., for defendants.

## MEMORANDUM OF DECISION

URBOM, District Judge.

The jury was given the claim under 42 U.S.C. §§ 1981 and 1983. It is my responsibility, on the other hand, to make findings of fact and conclusions of law about the claim under § 2000e.

The primary issues for resolution are the same in the § 2000e claim as in the §§ 1981 and 1983 claims: has a particular defendant intentionally:

a. established, adopted, endorsed, or allowed to continue employment practices and policies that have resulted in a hostile work environment for the plaintiff because of his race, or

b. subjected the plaintiff to disparate treatment in the matter of disciplinary actions because of his race?

If the answer is yes, the plaintiff is entitled to relief in an appropriate form, that may include declaratory relief, injunctive relief, or, if damages are shown, compensatory and punitive relief.

## I. UNCONTROVERTED FACTS

The parties have agreed that the following may be accepted as established facts for purposes of this case only:

John S. Ways, Sr., is a black male citizen of the United States.

John S. Ways, Sr., is employed by the City of Lincoln, Nebraska, as a police officer and has been continuously employed in that capacity since May 3, 1971.

The City of Lincoln, Nebraska, is a municipal corporation, chartered under the laws of the State of Nebraska, and a political subdivision of the State of Nebraska

B. Dean Leitner is employed by the City of Lincoln, Nebraska, as the Chief of Police and has been continuously employed in that capacity since December, 1978; and continuously employed by the City of Lincoln as a police officer since January, 1957.

John Hewitt is employed by the City of Lincoln, Nebraska, as a police captain and has been continuously employed in that capacity since September 25, 1980; and continuously employed by the City of Lincoln as a police officer since February 1, 1963.

Arthur Bandars is currently employed by the City of Lincoln, Nebraska, as a police sergeant since October 1, 1972; and continuously employed by the City of Lincoln as a police officer since May 22, 1967.

The plaintiff filed a charge of alleged discrimination with the Nebraska Equal Opportunity Commission on October 21, 1985.

John S. Ways, Sr., received a right to sue letter from the United States Department of Justice dated October 15, 1986, and filed the complaint herein within ninety (90) days of receipt of said right to sue letter.

## II. HOSTILE WORK ENVIRONMENT

■ Beginning in 1971, when the plaintiff began his employment with the Lincoln Police Department, he has experienced in the workplace racial slurs, jokes, comments, and cartoons. Some were aimed at him directly, such as the incident during his training when an officer in watching Ways practice artificial respiration on a C.P.R. doll called out that Ways had better enjoy it because it was the nearest he would ever get to a white woman. Most racial remarks were derogatory toward blacks generally, such as plaintiff's Exhibit 12, implying that a white man with a long black dildo and a shoe-polished face will be a sure attraction to black women. From time to time racially offensive cartoons appeared on bulletin boards in the police headquarters and substations. Racial jokes about blacks and American Indians were voiced in various places, but most often at lineup and in the locker room.

The frequency of these slurs, remarks, jokes and cartoons is not capable of precise determination, but I find that it was and is sufficient to have caused a hostile work environment, whereby the emotional well-

being of the plaintiff as an employee was significantly and adversely affected.

Whether the supervisory personnel knew of the hostile work environment is harder to determine. The greater weight of the evidence is that some of the supervisors were bound to have known of it; perhaps some did not know of it. If they did not, they chose to evaluate the environment as non-hostile despite clear indications. I hold that throughout the 1970s and 1980s enough of the command officers knew to require me to say that the City of Lincoln and the Lincoln Police Department knew of the hostile nature of the environment toward blacks.

No discipline has been imposed on anyone at any time for the racial incidents. It can accurately be said that by the greater weight of the evidence the command staff at the Lincoln Police Department did little to alter the atmosphere of unfriendliness toward blacks that has permeated at least the lower ranks of officers. The command staff, however, did not engage personally in speaking or distributing racial derogations.

As early as July, 1983, at the latest, Chief Leitner was notified in writing by the plaintiff and by an unsigned note written by a black officer, Jeffery Brooks, of racial name-calling and slurs occurring within the police departments "all the time" or as "an ongoing problem." They were followed by another written memo from Ways in September, 1983, regarding a poster of three black University of Nebraska football players. The poster had been hung on a bulletin board of a police substation and had been altered so that one was depicted as throwing a "ghetto blaster" radio in place of a football, another was running with a hubcap and, perhaps, a purse in place of a football, and the third as catching a watermelon in place of a football.

Chief Leitner sent the unsigned memo to three of his command officers with instructions to insure that the subordinate command officers and supervisors be advised "that this kind of insensitivity will not be tolerated" and "this conduct is subject to disciplinary action." The ones to whom the instructions were addressed were told to "advise when you have taken appropriate steps." What steps were taken is not shown by the evidence; whether Chief Leitner followed up to be assured that a thorough investigation was made is not shown by the evidence.

Chief Leitner, after the 1983 complaints, instituted a sensitivity training program under the leadership of Sgt. Ervin Portis. The primary result was a three-part video tape of 2½ hours in length, emphasizing how values are developed, and how people perceive others and themselves. Ways was involved in approving the tapes and they were shown to all officers and supervisory personnel. The tapes did not deal in any direct or specific way with racial discrimination or racial slurs, comments, name-calling, jokes or cartoons. Additionally, an attorney, Thom Cope, made presentations on affirmative action. While helpful, the remedial action was not impressively effective on the issue of a racially hostile work environment.

■ An employer may not stand by and allow an employee to be subjected to a course of racial harassment by co-workers. *DeGrace v. Rumsfeld*, 614 F.2d 796, 803 (1st Cir.1980). Once an employer has knowledge of a racially hostile atmosphere in a place of employment, the employer has an affirmative duty to take reasonable steps to eliminate that hostile atmosphere. *Snell v. Suffolk County*, 782 F.2d 1094 (2nd Cir.1986). A working environment that is overrun by racial antagonism constitutes a Title VII violation. *Gilbert v. City of Little Rock*, 722 F.2d 1390 (8th Cir.1983). The greater weight of the evidence supports the finding that the plaintiff has suffered from such an environment that has been allowed to exist without reasonable steps to eliminate it by the City of Lincoln or the Lincoln Police Department. I do not find that a monetary judgment against any of the individual defendants is warranted. While it has essentially been the duty of Chief Leitner to remedy the problem since his assumption of office in 1978, the environment existed before he arrived and he has taken some remedial steps. The other

individual defendants are not sufficiently responsible for the hostile environment to permit the award of monetary damages against them.

The jury awarded the plaintiff $35,000 against the Lincoln Police Department. I agree that the plaintiff is entitled to a monetary judgment against the Lincoln Police Department, but I also find that the plaintiff is entitled to a monetary judgment against the City of Lincoln—that is, allowance of one such amount, not two. I accept the jury's evaluation of the damage suffered by the plaintiff and find that that damage was suffered as the result of the hostile work environment. Additional remedial measures are in order, however, because the hostility of the environment, although reduced by the filing of this lawsuit, needs to be directly addressed and I conclude that that can best be done through an injunction.

### III. DISCIPLINARY ACTIONS

■ Incidents of discipline of Ways were put into evidence, including a reprimand regarding a report of a bomb, the refusal to allow Ways requested sick leave, and a suspension from duty for 40 hours without pay for jailing a young man without getting approval of a duty officer for the young man's refusal to sign a citation. Fair inferences could be drawn that these actions or some of them were in part racially inspired. The defendants, however, introduced evidence that each of the actions was for a legitimate nondiscriminatory reason, a violation of a department policy known to the plaintiff, and the plaintiff has not shown those reasons to be pretextual. The plaintiff has not sustained his burden of proving by the greater weight of the evidence that any of the incidents was for racial reasons, in whole or in part. *See, Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

### IV. RELIEF

■ As I earlier noted, compensatory damages totalling $35,000.00 should be awarded the plaintiff. The award should be against the City of Lincoln and the City of Lincoln Police Department jointly and severally. Additionally, there needs to be a declaration of a violation of the plaintiff's civil rights and some injunctive relief to assure a direct attack on the hostile work environment that persists.

What I shall do in a judgment is direct the formation by the defendants City of Lincoln, City of Lincoln Police Department and Dean Leitner, Chief of Police, of a plan for taking decisive action toward eliminating the racially hostile work environment and submitting it to the court and the plaintiff's counsel for evaluation. Such further hearings as seem to be necessary then can be had.

The plaintiff also is entitled to an attorney's fee. I shall withhold the entry of a judgment until the matter of the fee has been resolved.

IT THEREFORE IS ORDERED that the plaintiff shall have 15 days from the date of this order in which to submit a showing regarding an attorney's fee and the defendants shall have 10 days thereafter in which to respond; no judgment shall be entered until the resolution of the matter of attorney's fee has been made.

### ON MOTION FOR NEW TRIAL

The defendant City of Lincoln and City of Lincoln Police Department have filed a motion for new trial, specifying 11 grounds, which have been condensed to seven in the brief supporting the motion.

#### I.

The moving defendants challenge the sufficiency of the evidence to establish the existence of a hostile work environment. I have reviewed the evidence and the briefs and conclude that the evidence was quite sufficient.

#### II.

In the claim under 42 U.S.C. § 2000e I awarded injunctive relief against the City of Lincoln, City of Lincoln Police Depart-

ment and Dean Leitner, Chief of Police, and awarded damages against the City of Lincoln and the City of Lincoln Police Department jointly and severally. The moving defendants point out, correctly, that in *Muldrew v. Anheuser–Busch, Inc.*, 728 F.2d 989 (8th Cir.1984) the court held that damages for humiliation or emotional suffering are not appropriate under 42 U.S.C. § 2000e. Accordingly, I shall withdraw the award of damages from the § 2000e case, although the award is unaffected in the claims under §§ 1981 and 1983.

## III.

The moving defendants claim that the jury verdict against the City of Lincoln Police Department was the product of passion and prejudice and not upon evidence. I have reviewed the evidence and do not agree.

## IV.

Suit was brought against the City of Lincoln Police Department, as well as the City of Lincoln, the Chief of Police, and two police officers. The City of Lincoln Police Department now claims that it is not an entity and that judgment, therefore, cannot stand against it. I find to the contrary.

In the answer and amended answer, the City of Lincoln Police Department asserted that it is not a legal entity. That position was not thereafter asserted, until this motion for new trial. A final pretrial conference was held on October 21, 1987, attended by counsel for both parties. The order resulting from the conference was signed by counsel from both sides, showing in its caption the City of Lincoln Police Department as a party defendant. A listing of the controverted and unresolved issues in that order speaks nothing of the legal makeup of the City of Lincoln Police Department, despite this court's Local Rule 25 B which requires that the final pretrial order shall set out, among other things:

"D. Controverted and Unresolved Issues. The issues remaining to be determined and unresolved matters for the court's attention are: (set out each issue which is genuinely controverted ...)."

No evidence of whether the City of Lincoln Police Department is a separate entity was presented at the trial. No motion was made at the conclusion of the plaintiff's case or at the end of all the evidence on behalf of the City of Lincoln Police Department based upon the department's not being a legal entity or on any other basis. I conclude that the issue has been abandoned.

The plaintiff points to *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The suit was against a department of the City of New York as well as against the commissioner of that department and others. The plaintiffs' prayers for backpay were denied by the trial court, because any such damages would ultimately come from the City of New York and the district court held that the city was immune. The Supreme Court reversed that holding and said at page 690, 98 S.Ct. at 2035:

"Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies."

The implication was that "other local government units" included the New York City Department of Social Services.

In a footnote at that point the court said: "Since official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent—at least where Eleventh Amendment considerations do not control analysis—our holding today that local governments can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are 'persons' under § 1983 in those case in which, as here, a local government would be suable in its own name."

Similarly, the common sense approach suggests a suit against the City of Lincoln Police Department is either a suit against a separate entity or another way of pleading

an action against an entity, the city, of which the police department is an agent.

In any event, the problem ultimately is whether the judgment is collectible. That is the plaintiff's problem and I need not resolve it now when the plaintiff does not complain about it.

The movants' declare in their brief that "this Court" has held on some previous occasions that the City of Lincoln Police Department is not a separate entity subject to suit. No citation of any kind was given for that statement. I confess that I may have so held, or that some other judge of this district may have so held, but do not know when or in what case or, if it was done, the circumstances under which it was done. Accordingly, I am not in a position to be much influenced by it.

### V.

In *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107, 56 U.S.L.W. 4201 (1988), the court in three separate opinions, none of which commanded a majority of the members, discussed the legal standard for determining when isolated decisions by municipal officials or employees may expose the municipality to § 1983 liability. The moving defendants now argue that that case indicates that the instruction in the present case on policy or custom was incorrect.

No objection was made by any defendant to the instruction regarding policy or custom or any other instruction. The plaintiff's counsel proposed a change in the wording regarding policy or custom, but the defendants' counsel argued in defense of the wording proposed by me and ultimately adopted by me. Rule 51 of the Federal Rules of Civil Procedure precludes the movants from complaining of the instruction as given.

### VI.

The defendants claim that the plaintiff was allowed to testify to "numerous out of court statements which were made by someone other than the declarant and used to prove the truth of the matter asserted." Only one specific incident is called to my attention. That occurred when the plaintiff testified that a fellow officer, Don Wilkins, said that Arthur Bandars, a defendant, had asked Wilkins how he, Wilkins, could stand to ride in the same car with a nigger.

The colloquy that appeared at the trial indicated that the statement was not offered for the truth of what was said, except to the extent of showing that the statement by Wilkins was made.

The significance of the statement, of course, is the inference that the atmosphere of the work force around the plaintiff was one of hostility. That is a matter of state of mind under Rule 803(3). The issue under Rule 801(d)(2)(D) is whether the statement by Wilkins, the declarant, was concerning a matter within the scope of his employment, made during the existence of that relationship. It seems to me that it was. The statement had to do with what another employee was saying about working conditions—one police officer getting along with another in the work environment. I doubt that there is anything more significant to an employer than his employees' relationship with each other. The scope of employment is not only one's dealings with persons who are not co-employees, but also with persons who are co-employees. Because the evidence shows that the statement by Wilkins was made concerning a matter within the scope of his employment, while he was in that employment relationship, the statement was admissible. See 4 Weinstein's Evidence, 801–218ff.

### VII.

I have reviewed the award of attorney's fees and conclude that it was reasonable.