871 F.2d 750
 49 Fair Empl.Prac.Cas. 865,
49 Empl. Prac. Dec. P 38,908, 57 USLW 2643
 John WAYS, Sr., Appellee,
v.
CITY OF LINCOLN; City of Lincoln Police Department; Dean
Leitner, City of Lincoln Chief of Police, Appellants,
Arthur Bandars; John Hewitt.
John WAYS, Sr., Appellant,
v.
CITY OF LINCOLN; City of Lincoln Police Department; Dean
Leitner, City of Lincoln Chief of Police, Appellees,
Arthur Bandars; John Hewitt.
 Nos. 88-2081, 88-2214.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 12, 1988.
Decided April 3, 1989.
 
 John C. McQuinn, Lincoln, Neb., for appellants.
 Beverly Evans Grenier, Lincoln, Neb., for appellee.
 Before BOWMAN and MAGILL, Circuit Judges, and BATTEY,* District Judge.
 MAGILL, Circuit Judge.
 
 
 1
 The City of Lincoln, et al. appeal, and Officer John S. Ways cross-appeals, from a final judgment entered in Ways' favor in the United States District Court for the District of Nebraska. In a dual action, Ways, who is of black and American Indian descent, claimed that by permitting numerous offensive racial incidents to occur in the City of Lincoln Police Department (LPD) over the course of his sixteen-year career, his employers and supervisors violated 42 U.S.C. Sec. 1983 and 42 U.S.C. Sec. 2000e, et seq. (Title VII). The defendants in the district court were the City of Lincoln, the LPD, and, in their official capacities, Chief of Police B. Dean Leitner, Police Captain John Hewitt, and Police Sargeant Arthur Bandars.[1]
 
 
 2
 In the district court, Ways brought two co-equal actions against all of the defendants. His Sec. 1983 claim was tried by the jury, and his Title VII action was tried by the court. Ways made identical claims in both actions, and presented identical evidence to the jury and the court simultaneously.
 
 
 3
 Ways' claims were that (1) his employers and supervisors (the City of Lincoln, the LPD, Police Chief Leitner, Captain Hewitt and Sargeant Bandars) permitted the continuing existence of a racially hostile work environment, and (2) black and American Indian employees consequently suffered disparate treatment in the form of racial discrimination.
 
 
 4
 On March 3, 1988, the jury returned its verdict in the Sec. 1983 action. It found for Ways and assessed actual damages in the amount of $35,000 against the LPD. The City of Lincoln, Police Chief Leitner, Captain Hewitt and Sargeant Bandars were included on the verdict form as defendants potentially liable for damages, but the jury did not find them liable. Thus, the jury exonerated the City of Lincoln and all three individual defendants sued in their official capacities as LPD supervisors.
 
 
 5
 Ways also prevailed on the Title VII claim. In the Title VII bench trial, the court made independent findings concerning the sufficiency of the evidence of racial discrimination that Ways presented, and held that Ways had established the existence of a hostile work environment. The court initially entered judgment against the City, the LPD, and Chief Leitner, who are the appellants in the instant action. The court also assessed $35,000 in damages and granted Ways' requests for attorney fees (calculated by a standard hourly billable rate and including a ten percent enhancement[2]) and equitable relief (a formal declaration that Ways' civil rights had been violated and an order giving the LPD thirty days to formulate a scheme to eliminate the hostile work environment). Initially, the court held both the City and the LPD liable for damages, in spite of the jury verdict exonerating the City in the Sec. 1983 trial.
 
 
 6
 The defendants filed new trial motions in both the Sec. 1983 and Title VII actions, claiming (respectively) that the jury verdict was inconsistent and that the court's finding of a hostile work environment was based on insufficient evidence. In an order denying the motion, the court amended the judgment sua sponte, assessing liability for damages against the LPD only. Upon realizing that under Nebraska state law the LPD may not exist as a legal entity separate from the City, Ways moved for judgment n.o.v., or, in the alternative, a new trial, asking the court to reinstate its initial judgment holding the City and the LPD jointly and severally liable. This was denied.
 
 
 7
 For reversal, the City of Lincoln, the LPD, and Police Chief Leitner contend that the district court erred when it denied their motions for a new trial because (1) the jury verdict in the Sec. 1983 action is inconsistent in that it exonerates the City while assessing damages solely against the LPD; and (2) the evidence Ways offered in the Title VII bench trial was insufficient to establish a hostile work environment. The City also argues that by enhancing the attorney fees by ten percent, the court abused its discretion. Ways cross-appeals, arguing (1) that the court should have granted his motion for a judgment n.o.v. reinstating its original judgment (which assessed damages against the City and the LPD), and (2) that there was no abuse of discretion in the attorney fees enhancement.
 
 
 8
 We conclude that the court did not err in its conclusions that the evidence offered in the Title VII action was sufficient under Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1984); that the jury verdict in the Sec. 1983 action was not inconsistent; and that the original Title VII judgment should not be reinstated. However, the enhancement of Ways' attorney fees was clearly erroneous. Consequently, we affirm in part and reverse in part.
 
 I. SUFFICIENCY OF THE EVIDENCE
 
 9
 The first issue before us today is whether the district court, in the Title VII bench trial, erred in finding that Ways produced sufficient evidence to establish his claims that he was subjected to a hostile work environment and disparate treatment as a consequence of the racial antagonism he encountered at the LPD. In order to assess the district court's finding, let us first review some of the facts giving rise to Ways' claims.
 
 
 10
 John Ways began his career as a Lincoln, Nebraska police officer in May of 1971. From the beginning of his career, Ways has endured racial slurs and other offensive racially-oriented incidents in the workplace. In the Title VII bench trial, the district court found that Ways was personally the object of some of the incidents. For example, during his training, "an officer * * * watching Ways practice artificial respiration on a C.P.R. doll called out that Ways had better enjoy it because it was the nearest he would get to a white woman." Ways v. City of Lincoln, et al., 705 F.Supp. 1420, 1421 (D.Neb.1988). More often, Ways was subjected to jokes, comments and actions derogatory to blacks and American Indians in general. These included a pornographic cartoon depicting an American Indian man in a degrading scenario, a xeroxed form entitled "Nigger Application for Employment," and a multiple-choice "Black Intelligence Test." Ways offered these items as evidence, stating that they had been circulated in the LPD offices.
 
 
 11
 The district court also found in the Title VII action that "[f]rom time to time racially offensive cartoons appeared on bulletin boards in the police headquarters and substations. Racial jokes about blacks and American Indians were voiced in various places, but most often in lineup and in the locker room." Id.
 
 
 12
 Ways first complained about racial antagonism in the LPD in July of 1983. He sent a memorandum to Chief of Police Leitner, indicating that racial slurs in the department's offices were an "ongoing problem" occurring "all the time." He later sent Leitner a second memorandum protesting a specific incident: the defacement of a poster featuring three black players from the University of Nebraska football team. Leitner asked some of his subordinates if there were racial problems in the LPD. They assured him that there were none. Leitner also informed three command officers that racial incidents would not be tolerated and that they were subject to disciplinary action. However, he did not order an investigation to determine who was responsible for the defacement of the poster.
 
 
 13
 In response to the complaints submitted by Ways, Leitner initiated a "sensitivity training program," which consisted primarily of a three-part videotape dealing generally with people's perceptions of themselves and others. All officers and supervisors were required to view the tape, which, although approved by Ways, did not deal specifically with the problem Ways had complained of: frequent offensive racial incidents occurring in the LPD offices. The sensitivity training program was reinforced with a lecture by an attorney, who discussed affirmative action with LPD employees.
 
 
 14
 After the conclusion of the sensitivity training program, Ways was not satisfied that the hostile office environment had been eradicated or significantly improved. In October 1985, he filed charges of discrimination against the City and the LPD with the Nebraska Equal Opportunity Commission. The Commission found reasonable cause in Ways' allegations and he was subsequently issued a Right to Sue letter. Ways then filed his complaint in the United States District Court for the District of Nebraska on January 6, 1987.
 
 
 15
 In the Title VII bench trial, the court found that the greater weight of the evidence indicated that Ways suffered from a racially hostile work environment at the LPD. Ways v. City of Lincoln, et al., 705 F.Supp. at 1421. Appellants contend that this finding was clearly erroneous. Since we conclude that the finding of a racially hostile work environment at the LPD was not clearly erroneous, we affirm the district court's denial of the LPD's new trial motion in the Title VII action.
 
 
 16
 A district court's finding of unlawful discrimination is a finding of fact. Therefore, it is reversible on appeal only if the appellate court concludes that the finding is clearly erroneous under Rule 52(a) of the Federal Rules of Civil Procedure.[3] Pullman-Standard v. Swint, 456 U.S. 273, 290, 102 S.Ct. 1781, 1791, 72 L.Ed.2d 66 (1982); Coble v. Hot Springs School District No. 6, 682 F.2d 721, 723 (8th Cir.1982). The clearly erroneous standard has been characterized by the United States Supreme Court as follows: "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, North Carolina, 470 U.S. at 573, 105 S.Ct. at 1511 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). A reviewing court may not reverse the findings of a trier of fact merely because it is convinced it would have decided the case differently. "[A]ppellate courts must constantly have in mind that their function is not to decide factual issues de novo." City of Bessemer City, 470 U.S. at 573, 105 S.Ct. at 1511 (quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969)).
 
 
 17
 Ways claimed in the district court that throughout his seventeen-year career as a police officer, he has continually been subjected to racial slurs, comments, jokes and cartoons in the offices of the LPD. He claimed that the pervasiveness of offensive incidents at the LPD has resulted in a racially hostile work environment.
 
 
 18
 Title VII states that employees may not "discriminate against any individual with respect to * * * terms, conditions or privileges of employment, because of such individual's race." 42 U.S.C. Sec. 2000e-2(a)(1). A work environment must be dominated by racial hostility and harassment to rise to the level of a Title VII violation. Gilbert v. City of Little Rock, Arkansas, 722 F.2d 1390 (8th Cir.1983). To prove a Title VII violation, an employee must establish that his or her employer has created or condoned the continuing existence of a work environment that significantly and adversely affects the psychological well-being of an employee because of the employee's race. Johnson v. Bunny Bread Co., 646 F.2d 1250, 1257 (8th Cir.1981); Walker v. Ford Motor Co., 684 F.2d 1355, 1358 (11th Cir.1982).
 
 
 19
 However, adducement of a few isolated incidents of racially-oriented harassment or hostility is insufficient to establish a violation. See Bunny Bread, 646 F.2d at 1257 (citing Cariddi v. Kansas City Chiefs Football Club, Inc., 568 F.2d 87, 88 (8th Cir.1977)). A party must convince the trial court that he or she has endured a "steady barrage of opprobrious racial comment." Bunny Bread, 646 F.2d at 1257.
 
 
 20
 The pervasiveness of racially offensive incidents at the LPD was a subject of conflicting testimony in the district court. Several defense witnesses who were also department employees denied having seen the offensive cartoon, the so-called "intelligence test," or the xeroxed "employment form" Ways offered as evidence. They testified that although they had heard occasional racial slurs in the LPD's offices, the racial hostility they had observed never exceeded a few casual remarks.
 
 
 21
 Appellants argue that this testimony indicates that, although black and American Indian LPD employees have endured some degree of racial hostility and harassment, the situation has not reached the level of a Title VII violation. They further contend that, since Ways has documented an average of fewer than three incidents for each year of his career, the incidents he offered as evidence should be viewed as sporadic comments made in casual conversations. Since the cited incidents were casual, accidental, and relatively infrequent, the argument continues, they could not, in aggregation, create an environment that significantly and adversely affected Ways' psychological well-being or his ability to function as an LPD employee.
 
 
 22
 This line of reasoning prevailed in Gilbert and Bunny Bread. In both cases, no Title VII violation was found despite evidence of occasional racial antagonism. However, having thoroughly reviewed the record in this case, we are not left with a definite and firm conviction that, when assessing Ways' Title VII claim, the district court erred by finding that the slurs, jokes, comments and cartoons cited by Ways were sufficiently pervasive to have caused a racially hostile work environment. The incidents Ways listed are simply examples of the offensive racial incidents he has encountered during his career. He made no attempt to compile an exhaustive litany of every offensive racial slur or incident that he has been subjected to or witnessed as a City of Lincoln police officer. On several occasions, Ways testified to this effect in the district court. For instance, he testified that "[s]ome things were said in the locker room, some things were said in line up. Some things were said in training. I just can't recall all of them." Tr. 54:10-13. See also Tr. 74:21-23; Tr. 79:17-18. Consequently, under the doctrine enunciated in Bessemer City, we are not convinced that the district court's finding in the Title VII bench trial (based on approximately fifty examples of racial harassment) that Ways endured a hostile work environment in the offices of the LPD was clearly erroneous.
 
 
 23
 Appellants also argue that even if the LPD had become a hostile work environment and Ways' supervisors were aware of it, the district court's finding of a Title VII violation was clearly erroneous because the LPD had a written policy against racial harassment and took reasonable steps to respond to Ways' complaint. This contention is not entirely without merit, since the LPD did take some action to reform the situation that Ways brought to its attention. The chief of police notified subordinate supervisors of the allegations of racial problems, instituted the sensitivity training program, and brought in the attorney to lecture the LPD's employees on affirmative action.
 
 
 24
 The district court deemed the efforts by the LPD "not impressively effective" and found that "the command staff did little to alter the atmosphere of unfriendliness towards blacks * * *." Ways v. City of Lincoln, et al., 705 F.Supp. at 1422. In our view, this conclusion is not clearly erroneous. Though the Chief of Police did notify his subordinates of the allegations of racial problems in the workplace, he failed to impose disciplinary action or even to investigate a specific reported incident. Although he did screen a film, it plainly did not directly address the LPD's problems of racial discrimination. Similarly, the lecture by the attorney that the Chief of Police arranged was only obliquely related to the substance of Ways' protest. Therefore, it was not clearly erroneous for the district court to conclude in the Title VII action that the LPD did not take reasonable, substantial steps to eliminate the racially hostile work environment.
 
 
 25
 Moreover, we are convinced that once the jury entered its Sec. 1983 verdict in Ways' favor against the LPD, the court, in the Title VII action, was bound to follow it. This court has held that "[o]rdinarily, when Sec. 1983 and Title VII claims are tried jointly, the Sec. 1983 theory to the jury and the Title VII theory to the court, a jury verdict on the issue of discrimination would collaterally estop the parties with respect to that issue on the Title VII claim." Garza v. City of Omaha, 814 F.2d 553, 557 (8th Cir.1987) (quoting Goodwin v. Circuit Court of St. Louis County, Mo., 729 F.2d 541, 549 n. 11 (8th Cir.1984), cert. denied, 469 U.S. 828, 105 S.Ct. 112, 83 L.Ed.2d 55 (1984); 469 U.S. 1216, 105 S.Ct. 1194, 84 L.Ed.2d 339 (1984)).[4] Because of the collateral estoppel effect which must be accorded to the jury verdict, "the district court [is] without power to render a judgment on the Title VII claim inconsistent with the jury's findings * * * on the Sec. 1983 claim." Id. Therefore, the district court was free to make independent Title VII findings in the bench trial, but not to contradict the verdict rendered by the jury in the Sec. 1983 action. The jury finding of discrimination in the Sec. 1983 action thus required a similar finding by the district court in the Title VII action.
 
 II. LIABILITY
 
 26
 A second issue, whether the district court erred in its assessment of liability for the damages awarded to Ways, has been raised by both parties. The sequence of events giving rise to this issue took place as follows.
 
 
 27
 After the jury returned its verdict in the Sec. 1983 action, the district court entered an initial judgment that held both the City of Lincoln and the LPD jointly and severally liable for $35,000 in damages. This assessment of liability differed from that of the jury, which exonerated the City and all of the other defendants except the LPD. When considering the defendants' motions for new trials in the two actions, the court, upon its own motion, amended the judgment by assessing damages only against the LPD. Thus, the court eliminated the discrepancy between the Sec. 1983 jury verdict and the holding in the Title VII bench trial.
 
 
 28
 Ways contends that the district court erred by amending its initial judgment and asks this court either to reinstate the district court's initial judgment (which held both the City and the LPD liable) or to reverse and remand with instructions to enter a verdict in favor of Ways and against the City of Lincoln. If we were to do so, Ways would be spared the difficulty he may encounter when he attempts to collect his judgment from the LPD. Such an attempt may face resistance because the LPD may be legally inseparable from the City under Nebraska law, and the City was specifically exonerated by the jury.
 
 
 29
 The appellants also argue that liability for damages has been assessed erroneously. They believe that the district court committed error and abused its discretion by denying their motion for a new trial as to Ways' Sec. 1983 claim. The City contends that because the LPD does not exist as a legal entity distinct from the City, the jury verdict assessing damages against the LPD and exonerating the City is inconsistent as a matter of law. We reject the arguments of both appellants and appellees and affirm the district court's assessment of liability.
 
 
 30
 The confusion caused by the liability issue began with an error committed by Ways' counsel. Unaware that the LPD may be legally inseparable from the City of Lincoln, Ways' counsel included both the City and the LPD in Ways' complaint, stating that "[d]efendant [LPD] is and was at all times mentioned in the complaint the direct employer of the Plaintiff." In their answer, the defendants averred as follows:
 
 Sixth Defense
 
 31
 Defendant, City of Lincoln, Police Department is not a legal entity[.] Averments in Plaintiff's Complaint regarding Defendant City of Lincoln, Police Department fail to state a claim upon which relief can be granted.
 
 
 32
 Ways ignored the defense raised in the answer and did not amend his complaint to remove the LPD from the list of defendants potentially liable for damages assessed in the Sec. 1983 and Title VII actions. At no point in the litigation did Ways object to the LPD's inclusion in the list of defendants.
 
 
 33
 Nor did the defendants object after the initial pleadings. Counsel for the defendants avers that after the district court (in a Pretrial Conference Order filed on October 22, 1987) stated that the parties had agreed that "John S. Ways, Sr. is employed by the City of Lincoln, Nebraska * * *," he considered that statement the law of the case and believed that the issue of the identity of Ways' employer was definitively settled.
 
 
 34
 In spite of the defense stated in the defendants' answer and the uncontroverted fact included in the district court's pretrial order, the verdict sent to the jury did include the LPD as a potential defendant. Neither party objected. The verdict form read:
 
 We, the jury, find as follows
 
 35
 a. for the plaintiff, John Ways, Sr., and assess damages against the defendant or defendants before whose name or names we have marked "X" and in the amount we have written after the same name or names, as follows:
 
 
 36
 City of Lincoln in the amount of $__________
 
 
 37
 actual damages.
 
 
 38
 X City of Lincoln Police Department in the amount of $35,000.00 actual damages.
 
 
 39
 B. Dean Leitner in the amount of $__________
 
 
 40
 actual damages and $__________
 
 
 41
 punitive damages. (if none write "none")
 
 
 42
 Arthur Bandars in the amount of $__________
 
 
 43
 actual damages and $__________
 
 
 44
 punitive damages. (if none write "none")
 
 John Hewitt in the amount of $__________
 
 45
 actual damages and $__________
 
 
 46
 punitive damages. (if none write "none")
 
 
 47
 b. for the defendants. (Circle "a" or "b")
 
 
 48
 Dated March 3, 1988.
 
 
 49
 Both parties allege on appeal that the district court erred when it allowed the LPD to be included in the jury instructions as a separate defendant, thus permitting the confusion over liability to arise. They are incorrect. Rule 17(b) of the Federal Rules of Civil Procedure indicates that "[t]he capacity of an individual * * * to * * * be sued shall be determined by the law of the individual's domicile." The LPD is domiciled in Nebraska. Nebraska law indicates that a court:
 
 
 50
 may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding, by adding or striking out the name of any party or by correcting a mistake in the name of the party, or a mistake in any other respect * * *.
 
 
 51
 Neb.Rev.Stat. Sec. 25-852 (Reissue 1985) (emphasis added). See also Scottsbluff Typewriter Leasing Co. v. Beverly Enterprises-Nebraska, 230 Neb. 699, 432 N.W.2d 844, 847 (1988) (quoting Neb.Rev.Stat. Sec. 25-852). Thus, in Nebraska, a court may, but is not obligated to, correct errors committed by the parties regarding the capacity of a defendant to be sued.
 
 
 52
 The Federal Rules of Civil Procedure, on the other hand, impose an affirmative duty on litigants: "[n]o party may assign as error the giving or the failure to give [jury instructions] unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51.[5]
 
 
 53
 Thus, the parties were required to assert objections to the jury instructions before the jury retired or not at all. As we have noted above, neither party objected (even though the court had solicited objections during two jury instruction conferences) to the inclusion of the LPD in the list of defendants after the defendants' answer. Because the litigants failed to object to the jury instructions at the required time, and Nebraska law indicates that the court was not obligated to correct the litigants' error, we conclude that the litigants are at fault for the resulting confusion. Therefore, we affirm the district court's assessment of liability.
 
 III. ENHANCEMENT OF THE ATTORNEY FEES
 
 54
 Finally, we address whether the district court abused its discretion when it enhanced the attorney fees award by ten percent.
 
 
 55
 Prevailing parties in cases brought pursuant to the Civil Rights Act are entitled to fees and costs under 42 U.S.C. Sec. 1988. See Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The district court calculated the attorney fees award for Ways' counsel using a standard hourly billing rate. Ways then requested a ten percent enhancement in recognition of the risk of nonpayment inherent in his counsel's agreement to take the case on a contingent fee basis. The district court granted the request.
 
 
 56
 The United States Supreme Court has ruled that risk of non-payment for work in a contingent fee case is not an acceptable justification for fee enhancement. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 3086, 97 L.Ed.2d 585 (1987) ("we are unconvinced that Congress intended the risk of losing a lawsuit to be an independent basis for increasing the amount of any otherwise reasonable fee * * *"). Similarly, the Eighth Circuit, following the reasoning in Pennsylvania v. Delaware Valley, held recently that unless there is a demonstration that "enhancement was necessary to attract competent local counsel in light of the risk of loss arising from the class' contingency arrangement," no enhancement based on risk of loss is permissible. Catlett v. Missouri Highway and Transportation Commission, 828 F.2d 1260, 1271 (8th Cir.1987).
 
 
 57
 The record demonstrates that this case involved a normal contingent fee situation. The fee was reasonable prior to the ten percent enhancement and Ways was able to attract competent counsel to represent him. In light of Pennsylvania v. Delaware Valley, and because the record contains no indication of the necessity required by Catlett, we conclude that the district court abused its discretion by enhancing the fees for Ways' counsel. Therefore, the ten percent enhancement is reversed.
 
 IV. CONCLUSION
 
 58
 For the reasons discussed above, we affirm the judgment in favor of Ways and against the City of Lincoln Police Department and reverse the enhancement of the attorney fees awarded to Ways' counsel.
 
 
 
 *
 THE HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 Hewitt and Bandars were exonerated and consequently are not litigants in this appeal
 
 
 [2]
 The enhancement was allowed in recognition of the risk of nonpayment taken by Ways' counsel, who worked on a contingent fee basis
 
 
 [3]
 Rule 52(a) states that "[f]indings of fact * * * shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."
 
 
 [4]
 This approach to collateral estoppel in dual Sec. 1983 and Title VII actions has also been taken in the Seventh Circuit. See Hussein v. OshKosh Motor Truck Co., 816 F.2d 348, 355 (7th Cir.1987) (the findings of the jury on factual issues in Sec. 1983 actions which were common to the Title VII action binds the court in the Title VII action)
 
 
 [5]
 "The purpose of Rule 51 is to compel litigants to afford the trial court an opportunity to correct any error in the instructions and also to prevent the losing party from obtaining a new trial through relying on a possible error in the original trial." Johnson v. Houser, 704 F.2d 1049, 1051 (8th Cir.1983) (per curiam)