Judith Ann JONES, Appellee,

Daniel Jones,

v.

WESCO INVESTMENTS, INC.,
Benjamin Bryan Rose,
Appellants.

John Doe, 1, 2, 3 or more.

No. 87–1992.

United States Court of Appeals,
Eighth Circuit.

Submitted March 29, 1988.

Decided May 18, 1988.

Robert G. Duncan, Kansas City, Mo., for appellants.

No argument for appellee.

Before MAGILL, Circuit Judge, and FLOYD R. GIBSON and BRIGHT, Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

Defendant/appellant Wesco Investment, Inc. and Benjamin B. Rose (hereinafter collectively referred to as Rose) appeal the district court's [1] finding of sexual harassment committed by Rose against Judith Ann Jones, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* On appeal, Rose challenges the sufficiency of the evidence supporting the district court's decision. We affirm.

## I. BACKGROUND

Ben Rose is the president of Wesco, a company which manages apartment projects.[2] Wesco hired Judith Jones, a married woman, as a receptionist on June 8, 1984. In October, Susan Rose [3] promoted Ms. Jones to office manager, and eventually Wesco constructed an office for Ms. Jones located in the loft area near Ben Rose's office. Ms. Jones terminated her employment with Wesco on February 8, 1985 because she could no longer tolerate the sexual nature of Ben Rose's conduct toward her.

From the beginning of her tenure with Wesco, Ms. Jones was barraged with repeated sexual advances, request for sexual favors, and other verbal or physical contact of a sexual nature. For instance, Ben Rose would come up behind Ms. Jones and rub his hands up and down the sides of her body, touching her breasts. He would pinch her, pat her on the bottom and kiss her on the top of her head. At one point, Rose even put his hand up Ms. Jones' dress on her outside thigh.

His oral comments included a statement that someday her breasts would be his. On one occasion, Ben Rose entered the kitchen area in the Wesco suite and informed Ms. Jones that he thought it a good idea that Ms. Jones spend more time in the kitchen area where it was cool because he could see her nipples much better in the cool temperature.

On at least three occasions, Mr. Rose requested Ms. Jones to accompany him to unoccupied apartment buildings ostensibly for advice involving the building or redecoration of the apartments. Each time, Ben Rose put his arm around Ms. Jones before she could extricate herself from the situation. On one of these occasions, Ben Rose also kissed her on the lips before she could pull away.

On each of the above occasions, Ms. Jones would either push Ben Rose away, remove herself from the room, or inform Rose that she was only interested in a business relationship.[4] Doing so halted Rose's advances, but only temporarily. His uninvited attentions recommenced with the next available opportunity.

Based on Ben Rose's conduct, the district court, in a bench trial, determined that Rose sexually harassed Ms. Jones. The district court awarded Ms. Jones back pay, interest on the back pay, attorney's fees,

---

1. The Hon. D. Brook Bartlett, United States District Judge for the Western District of Missouri.

2. Wesco handles the bookkeeping, payroll and management of apartment projects owned by Wesco and by other companies, some of which are partially owned by Susan and/or Ben Rose.

3. From the record, it appears as though Ben Rose ran that part of Wesco which concerned apartment construction, while Susan Rose supervised the office portion of the business.

4. A court must consider any provocative speech or dress of the plaintiff in a sexual harassment case. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68–69, 106 S.Ct. 2399, 2406–07, 91 L.Ed. 2d 49 (1986). Giving *Meritor* due consideration, we observe from the record that Ms. Jones wore non-provocative clothing.

and required Wesco to post a specifically worded notice advising Wesco employees that the employer does not tolerate sexual harassment. The court also required Ben Rose to post the same notice at every business he presently or in the future owns. This appeal followed.

## II. DISCUSSION

■ A claim of sexual discrimination in violation of Title VII may be based on two types of conduct. First, *"quid pro quo* sexual harassment, which 'occurs when submission to sexual conduct is made a condition of concrete employment benefits.' " *Hall v. Gus Constr. Co.,* 842 F.2d 1010, 1013 (8th Cir.1988) (quoting *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1413 (10th Cir.1987)). The second type, called hostile work environment, exists when sexual conduct " 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) (quoting 29 CFR § 1604.11(a)(3) (1985)). Under the latter theory, the plaintiff must show that "(1) she belongs to a protected group, (2) she was subject to unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment affected a 'term, condition, or privilege' of employment, and (5) the employer knew or should have known of the harassment in question and failed to take proper remedial action." *Moylan v.*

*Maries County,* 792 F.2d 746, 750 (8th Cir. 1986).

■ Rose does not contest the facts as set forth above. Nor does he indicate how Ms. Jones failed to establish the elements required for a claim of hostile working environment sexual harassment. Rather, Rose argues that his conduct, as set forth above, is insufficient to support a claim for relief of sexual harassment.

The standard of review for Rose's argument has recently been stated in *Hall* as follows:

> We must assess the trial court's factual finding that the women were subjected to sexual harassment under the clearly erroneous standard of review. Fed.R. Civ.P. 52(a); *Yates v. Avco Corp.,* 819 F.2d [630] at 634 [6th Cir.1987]; *see also Chambers v. Omaha Girls Club, Inc.,* 834 F.2d 697, 702 (8th Cir.1987). We may reverse the district court's finding of sexual harassment only if we are " 'left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City,* 470 U.S. 564, 573 [105 S.Ct. 1504, 1511, 84 L.Ed.2d 515] (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 [68 S.Ct. 525, 542, 92 L.Ed. 746] (1948)).

*Hall,* at 1013.

From our review of the transcript, we believe that the district court's decision is fully supported by the facts and law.[5] Indeed, any other result would have been a

---

**5.** The trial court's findings and conclusions recite:

[One,] the plaintiff was the victim of unwelcomed sexual advances, plus verbal and physical conduct of a sexual nature;

Two, that this sexual harassment was sufficiently severe and pervasive to alter the conditions of plaintiff's employment and create an abusive working environment;

Three, defendant Wesco is liable for the acts of Ben Rose because Wesco knew or should have known about the sexual harassment;

Four, accordingly, defendant Wesco has committed unlawful employment practice in violation of Title VII by intentionally discriminating against plaintiff with respect to the

terms, conditions, and privileges of employment because of her sex.

Plaintiff's claim under Title VII against Ben Rose personally. Under Title VII, 42 U.S.C. Section 2000(e), an employer is identified or defined as "a person engaged in industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person."

Based on the evidence presented in this case, it is my conclusion that defendant Ben Rose was an agent of Wesco Investments and, therefore, the findings of violation of Title VII made with regard to Wesco are equally applicable to individual defendant Ben Rose.

miscarriage of justice.[6]

Accordingly, we affirm.

---

**6.** The essence of Rose's argument for a contrary determination can be gleaned from his brief which, in pertinent part, reads as follows:

Any argument in this type of case on this issue is bound to sound sexist, but it is important to point out that one of the traditional places where man meets woman is at the work place. Such meetings often result in dating, blossom into love, and eventually into marriage. Not always are both parties in this cycle unmarried. If civil liability is implanted on an employer for its employees natural interaction between the genders, either the collapse of our commercial system or the end of the human race can be foreseen. No employer could safely employ both males and females, and the number of marriages with children will be substantially decreased. There should be nothing wrong with a man, even a supervisor, telling a female that she looks nice. Nor can there be anything wrong with a man, even a supervisor asking a female out of [sic] a date. In doing so the man should not have to gamble civil liability upon her "yes" response. Where is the line between these instances and those held to be actionable in *MERITOR*, supra? Defendant's [sic] suggest that the line is beyond the conduct of Ben Rose, as testified to by Judith Jones.

Brief of Appellants at 23.

Needless to say, the argument accords neither with the facts nor the law in the present case.