**Deborah J. STAFFORD, Plaintiff,**

v.

**STATE of Missouri, et al., Defendants.**

**No. 89–4014–CV–C–9.**

United States District Court,
W.D. Missouri, C.D.

Oct. 13, 1993.

Roger G. Brown, Roger G. Brown & Associates, Jefferson City, MO, Pamela Lambert, Columbia, MO, for plaintiff.

Deborah J. Neff, Mo. Atty. Gen. Office, Jefferson City, MO, for all defendants.

## ORDER

BARTLETT, District Judge.

Beginning on August 10, 1992, evidence was presented to the jury on plaintiff's claims for hostile environment sexual harassment and sex discrimination pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The evidence presented to the jury was also considered by me on plaintiff's claims for hostile environment sexual harassment and sex discrimination pursuant to 42 U.S.C. § 2000e, *et seq.* (Title VII) and Mo.Rev.Stat. § 213.055. On August 19, 1992, during trial, judgment was entered in favor of the defendants as a matter of law on plaintiff's claim under § 1983 that she was denied a promotion because of her sex. On August 20, 1992, during trial, judgment as a matter of law was entered in favor of defendants Dick D. Moore and John Carmichael on plaintiff's § 1983 hostile environment sexual harassment claim. On August 24, 1992, also during trial, I granted plaintiff's request to dismiss her § 1983 hostile environment sexual harassment claim against defendant George Adams.

On August 25, 1992, the jury returned verdicts in favor of defendants Clifford Oetting and Phillip Vance and against defendants Arthur Dearixon and Robert Williams on plaintiff's § 1983 hostile environment sexual harassment claim. The jury awarded plaintiff $43,500 on her claim against Dearixon and $101,500 on her claim against Williams. By special interrogatory, the jury found that 1) plaintiff was constructively discharged by Dearixon's conduct, 2) plaintiff was constructively discharged by Williams' conduct, 3) $94,108 was the total difference between what plaintiff would have earned at the Department of Corrections if she had not been constructively discharged and what she has earned and will earn in other employment; 4) $28,200 of the $43,500 plaintiff was awarded on her claim against Dearixon was the difference between what plaintiff would have earned at the Department of Corrections if she had not been constructively discharged and what she has earned and will earn in other employment; and 5) $65,800 of the $101,500 plaintiff was awarded on her

claim against Williams was the difference between what plaintiff would have earned at the Department of Corrections if she had not been constructively discharged and what she has earned and will earn in other employment.

The jury also awarded plaintiff punitive damages of $1 on her § 1983 hostile environment sexual harassment claim against Dearixon and punitive damages of $1 on her § 1983 hostile environment sexual harassment claim against Williams.

Defendants Dearixon and Williams move for judgment as a matter of law or, in the alternative, for a new trial or, in the alternative, for remittitur on plaintiff's § 1983 hostile environment sexual harassment judgment. Plaintiff moves for pre-judgment interest and "to conform the verdict or for additur."

## I. *Defendant Dearixon's Motion for Judgment As a Matter of Law*

### A. *Standard of Review*

 In ruling on a motion for judgment as a matter of law, the district court must 1) consider the evidence in the light most favorable to the prevailing party, 2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, 3) assume as proved all facts that the prevailing party's evidence tended to prove, and 4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. If, viewed in this manner, the evidence would allow reasonable jurors to differ as to the conclusions to be drawn from the evidence, the motion must be denied. *City National Bank of Fort Smith v. Unique Structures, Inc.*, 929 F.2d 1308, 1312 (8th Cir.1991); *Dace v. ACF Industries*, 722 F.2d 374, 375 (8th Cir.1983). If, however, all the evidence points one way and is susceptible of no reasonable inference sustaining the position of the prevailing party, the motion must be granted. *White v. Pence*, 961 F.2d 776, 779 (8th Cir.1992).

 I may not consider the credibility of the witnesses or the weight of the evidence. *White*, 961 F.2d at 779; *United States E.P.A. v. City of Green Forest, Arkansas*, 921 F.2d 1394, 1410 (8th Cir.1990), *cert. denied*, ——

U.S. ——, 112 S.Ct. 414, 116 L.Ed.2d 435 (1991); *McKnelly v. Sperry Corp.*, 642 F.2d 1101, 1105 (8th Cir.1981).

### B. *Discussion*

Defendant Dearixon argues that judgment as a matter of law should be granted in his favor on plaintiff's § 1983 sexual harassment claim for the following reasons: 1) the evidence was insufficient to establish the existence of a sexually hostile atmosphere, much less a sexually hostile atmosphere so intolerable that plaintiff was constructively discharged as a result of the conduct of Dearixon; 2) plaintiff was not entitled to damages because she would have been fired when defendant Missouri Department of Corrections' (DOC) discovered that plaintiff lied on her job application to the DOC; 3) Dearixon is immune from money damages due to qualified immunity; 4) the court erroneously denied defendant Dearixon's Motion for Mistrial after plaintiff elicited testimony concerning alleged improprieties in the investigator's office; 5) the court erroneously allowed plaintiff's expert to testify about front-pay damages when plaintiff had not established constructive discharge; and 6) the court erroneously allowed plaintiff's expert to testify about front-pay damages because the numbers were misleading and unfair.

 Section 1983 provides no substantive rights. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 618, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979). Section 1983 merely provides a cause of action for deprivation of rights granted by the Constitution and laws of the United States. *Id.*

 Sexual harassment by employees of a state agency constitutes sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and is actionable under § 1983. *Pontarelli v. Stone*, 930 F.2d 104, 113 (1st Cir.1991); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3rd Cir. 1990); *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir.1989); *Bohen*, 799 F.2d at 1185.

 To prevail on her § 1983 claim, plaintiff must establish that the defendant intentionally discriminated against her. *Batson v.*

*Kentucky,* 476 U.S. 79, 90, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). Thus, "the ultimate inquiry is whether the sexual harassment constitutes intentional discrimination." *Bohen v. City of East Chicago, Ind.,* 799 F.2d 1180, 1187 (7th Cir.1986); *Marshall v. Kirkland,* 602 F.2d 1282, 1299 (8th Cir.1979). Because plaintiff's § 1983 claim is based upon the theory that plaintiff was treated differently because of her sex, the evidence must establish that plaintiff was harassed *because* she is a woman. *Andrews,* 895 F.2d at 1478. Thus, a defense to a sexual harassment claim is a showing by defendant that the plaintiff was treated the way she was because of factors personal to her and not because she was a woman. *Trautvetter v. Quick,* 916 F.2d 1140, 1149 (7th Cir.1990); *Bohen,* 799 F.2d at 1187; *Huebschen v. Department of Health & Human Resources,* 716 F.2d 1167, 1171 (7th Cir.1983); *see Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (conduct must be motivated " 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."); *Marshall,* 602 F.2d at 1299 (same).

■ The instruction on the elements of plaintiff's claims presented plaintiff's theory that she had been subjected to intolerable working conditions because of her sex and thereby forced to resign from the DOC.

Your verdict must be for plaintiff and against defendant Arthur Dearixon on plaintiff's claim that she was treated differently from male corrections officers by defendant Dearixon because she is a woman if you believe:

FIRST, defendant Dearixon intentionally made plaintiff's working conditions intolerable;

SECOND, defendant Dearixon did so because plaintiff is a woman; and

THIRD, as a direct result of what defendant Dearixon did, and only what defendant Dearixon did, plaintiff was damaged.

In considering the claim against defendant Dearixon, you may consider ONLY acts in which defendant Dearixon personally participated.

If all of you do not believe all three elements listed above, then your verdict must be for defendant Arthur Dearixon.

On the other hand, if each of you believes the three elements listed above, your verdict must be for plaintiff Deborah Stafford. Instruction 32.

Plaintiff relies on evidence of the following acts and statements to support the verdict against Dearixon: 1) Dearixon did not give plaintiff enough opportunities to perform investigations which were part of her job; 2) Dearixon failed to investigate Lieutenant James Moreland's harassment of plaintiff; 3) Dearixon made plaintiff leave the office plaintiff shared with investigator Coonce to allow a female CO-1 and an inmate to be alone together, which made plaintiff "feel like a piece of meat;" 4) Dearixon refused to investigate the Wilson–Butler incident; and 5) Dearixon called plaintiff a "bitch." Plaintiff's Suggestions in Opposition to Defendant Dearixon's Motions for Summary Judgment and New Trial at 5.

In November 1986, plaintiff was temporarily assigned to the investigator's office. Her duties were primarily clerical with only about 20% of her working time spent on investigations. *See* defendants' Exhibit JJ. Plaintiff complains that while working in the investigator's office, Dearixon did not allow her to work on the sexual harassment investigation involving Major Dearduff. Melvin Coonce, an assistant investigator in the office, was assigned to the Dearduff investigation. Plaintiff stated that she should have been assigned to the Dearduff investigation because only a woman could properly investigate a sexual harassment charge.

Plaintiff's contention is not supported by either the law or common sense. The law does not require that sexual harassment investigations be conducted only by people of the same sex as the accuser. Also, there was no evidence in this case that men *per se* were unqualified to conduct *this* investigation or that Coonce was unqualified to investigate the sexual harassment claim. In fact, plaintiff never said or thought that she was better at Coonce's job than Coonce. Coonce, who was a CO-2 (plaintiff was a CO-1), had more experience working in prisons and held the

position of full-time assistant investigator. Considering the evidence in the light most favorable to plaintiff, defendant Dearixon's refusal to assign plaintiff to work on the Dearduff investigation could not have been used by a reasonable jury to support the conclusion that plaintiff was discriminated against because she is a woman.

Next, plaintiff relies on evidence that Dearixon failed to investigate plaintiff's complaint that Lieutenant Moreland was harassing her.

On May 14, 1987, plaintiff sent a memorandum to Major Eberle, Chief Security Officer, in which she complained about harassment by Lieutenant Moreland. Defendants' Exhibit T. On May 17, 1987, Moreland wrote a memorandum to Eberle in which he responded to plaintiff's allegations. Defendants' Exhibit U. On May 18, 1987, plaintiff gave a note to Eberle which stated: "Since the writing of this memo, Lt. Moreland and I have had quite a lengthy discussion into our conflict. We have reached a mutual agreement, and should have no further problems." Defendants' Exhibit V. On May 28, 1987, plaintiff wrote a "Formal Complaint Against the Department of Corrections" addressed to Superintendent Dick Moore. Defendants' Exhibit BBBB. On page three of the Formal Complaint, plaintiff states that she informed Dearixon of threats made to her by Moreland on May 19, 1987. Plaintiff states that she telephoned Dearixon on May 20, 1987, and asked whether Dearixon had talked to Moreland. *Id.* According to plaintiff, Dearixon told her that he had talked to Moreland about plaintiff's allegations and Moreland had denied them. *Id.* Plaintiff then asked Dearixon "What now?" and Dearixon replied "Nothing. He is a lieutenant." *Id.* Plaintiff's response to Dearixon was "Okay, thank you." *Id.*

Accepting this evidence as true, the jury would not have been acting reasonably to have concluded that Dearixon's refusal to investigate further supports the conclusion that Dearixon subjected plaintiff to a hostile environment because of her sex. There was no reliable evidence that Dearixon had any authority to investigate further. Even if plaintiff testified that there was such authori-

ty, her testimony alone on that issue is not sufficient to create a basis for a reasonable jury to conclude defendant had the authority. For the jury to have so concluded would have been speculation. Furthermore, it would have been speculation for the jury to conclude that Dearixon did nothing more because plaintiff was a woman. The reason given by Dearixon for doing nothing more, i.e., Moreland was a lieutenant, cannot reasonably be equated to declining to investigate further because plaintiff is a woman.

Plaintiff relies on the testimony about an incident where Dearixon ordered plaintiff to leave the investigator's office she shared with Coonce so that Dearixon could meet with Donna Hoelscher, a female CO–1 convictions officer, and an inmate. On cross-examination, plaintiff admitted that Coonce, not Dearixon, told her to leave the office, but plaintiff assumed that the order to leave came from Dearixon. Plaintiff testified that after she was told to leave the office, Dearixon left also. Plaintiff admitted that she does not know what happened in the investigator's office after she left. She assumed that Hoelscher and the inmate were being left alone together so that they could engage in sexual relations. Plaintiff testified that sexual relations between an inmate and an officer violated policy and that Dearixon's handling of the situation made her "feel like a piece of meat."

Even if one views this evidence as favorably to plaintiff as reason allows, the jury would not have been acting reasonably if it relied upon this incident as demonstrating that plaintiff was treated differently because she was a woman. Plaintiff's reaction to this situation was not reasonable. Based on a series of assumptions devoid of a factual basis, plaintiff's overactive imagination led her to an unreasonable assumption about what was going on in the office.

Furthermore, even if someone would believe that plaintiff's reaction was the reaction of a reasonable woman, there was no evidence from which the jury could reasonably conclude that when Dearixon left the officer and the inmate alone in the office he intended to treat plaintiff differently because of her sex.

Plaintiff points to evidence that Dearixon refused to investigate the "near stabbing" involving inmates Wilson and Butler. Plaintiff testified that Wilson and Butler were competing for her attention. Plaintiff felt that there was a strong potential for violence between Wilson and Butler. She was concerned that the violence might possibly involve her. Plaintiff's primary concern was her own safety.

Capt. Adams investigated the incident, persuaded the inmates to sign a peace pact and changed the plaintiff's duty station from the area where these two inmates were housed to another area. *See* defendants' Exhibit A. Plaintiff was not satisfied with this resolution of the matter, *see id.,* so she complained to Capt. Blank. Capt. Blank moved inmate Wilson out of Housing Unit 2A and into the detention area. *See* defendant's Exhibit B. Butler was moved a few weeks later. Thus, the matter was investigated by custody personnel and corrective action was taken.

Plaintiff suggests that in some way Dearixon did not do his job with regard to this matter. However, both Dearixon and Jerry Kush, a corrections officer during the time plaintiff was employed at MSP, testified that threats from inmates were usually investigated and handled by custody personnel, not by the investigator's office. Although plaintiff's witness, Melvin Coonce, testified that he believed Dearixon was not concerned about plaintiff's safety, he did not provide a basis for a reasonable jury to conclude that Dearixon would normally investigate this type of situation or even that he had authority to do so.

Again, this evidence could not have been relied upon reasonably by the jury to conclude that defendant treated plaintiff differently than others because she was a woman.

Finally, plaintiff presented the testimony of Melvin Coonce that at some unspecified time after plaintiff had left the investigator's office, and perhaps even after plaintiff filed this lawsuit, Dearixon referred to plaintiff as a "bitch." No evidence was presented that Dearixon ever called plaintiff a bitch to her face, or even called her a bitch while she was working in his office. Thus, even if the jury believed that defendant called plaintiff a bitch after she left defendant's office, this evidence could not have been used by the jury to conclude that her working conditions were intolerable.

Furthermore, the evidence about the derogatory statement does not provide a reasonable basis for concluding that plaintiff was ever treated differently by Dearixon because she was a woman.

Considering the evidence in the light most favorable to plaintiff and giving her the benefit of all favorable inferences that reasonably may be drawn from the facts proved, no jury reasonably could have concluded that Dearixon intentionally treated plaintiff differently because she is a woman. Considering all of the incidents in total in the context of the four and one-half months that plaintiff worked in Dearixon's office, the evidence would not have permitted a reasonable jury to find that Dearixon intentionally made plaintiff's working conditions intolerable.

Also, only a jury that was ignoring the evidence and the reasonable inferences supported by the evidence could conclude that Dearixon's actions made plaintiff's working conditions so intolerable that she was forced to resign from the Department of Corrections almost one and one-half years after plaintiff last worked for Dearixon. *See* discussion at pp. 19–21 with regard to defendant Williams. The reasoning with regard to defendant Dearixon is even more persuasive than for defendant Williams because plaintiff worked with Dearixon before she worked with Williams.

Because no reasonable jury could have reached the conclusion that Dearixon made plaintiff's working conditions intolerable because of plaintiff's sex or that plaintiff was driven out of DOC by Dearixon's actions, Dearixon's Motion for Judgment As a Matter of Law will be granted and the jury's award of compensatory damages in the amount of $43,500 and punitive damages in the amount of $1 will be vacated.

## II. *Defendant Dearixon's Motion for New Trial*

Having granted Dearixon's Motion for Judgment as a Matter of Law, it is unneces-

sary to consider his Motion for New Trial. Nevertheless, in order to enable the Court of Appeals to conduct a complete review, I will rule on the Motion for New Trial.

### A. Standard of Review

■ A new trial may be granted if the verdict in the first trial was so against the weight of the evidence that a miscarriage of justice has occurred. *White*, 961 F.2d at 780; *Fireman's Fund Insurance Co. v. AALCO Wrecking Co.*, 466 F.2d 179, 187 (8th Cir. 1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973). A new trial may not be granted merely because the evidence permitted different inferences or because another result would be more reasonable. *Blake v. J.C. Penney Co.*, 894 F.2d 274, 281 (8th Cir.1990).

■ In considering the motion, the district court may conduct its own evaluation of the evidence. *White*, 961 F.2d at 780; *Champeau v. Fruehauf Corp.*, 814 F.2d 1271, 1277 (8th Cir.1987). It may " 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.' " *White*, 961 F.2d at 780 (quoting *Ryan v. McDonough Power Equipment*, 734 F.2d 385, 387 (8th Cir.1984)). The prevailing party need not be given the benefit of every favorable inference. *Blake*, 894 F.2d 274, 281 (8th Cir. 1990). The district court must state its reasons for concluding that a new trial is proper. *Id.; White*, 961 F.2d at 781.

### B. Discussion

For the reasons discussed in granting Dearixon's Motion for Judgment As a Matter of Law, I am convinced the verdict was so against the weight of the evidence that a miscarriage of justice has occurred. Plaintiff failed to establish that Dearixon treated plaintiff differently because she is a woman, that anything Dearixon did made plaintiff's working conditions intolerable, or that anything Dearixon did caused plaintiff to seek a transfer from MSP over a year later or to resign from the Department of Corrections almost one and one-half years after leaving Dearixon's office.

Accordingly, defendant Dearixon's Motion for New Trial will be granted if for any reason his Judgment As a Matter of Law is vacated.

### III. Defendant Dearixon's Motion for Remittitur

■ A district court may order remittitur as a condition of denying a motion for new trial if "the verdict is so grossly excessive as to shock the court's conscience." *Estes v. Time Insurance Co.*, 980 F.2d 1228, 1235 (8th Cir.1992); *see also Slatton v. Martin K. Eby Construction Co.*, 506 F.2d 505, 509 (8th Cir. 1974), *cert. denied*, 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975) (court should grant remittitur when "the verdict is so unreasonably high as to result in a miscarriage of justice, or ... is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate").

■ Whether a verdict is sufficiently outrageous to warrant remittitur is committed to the discretion of the district court. *Estes*, 980 F.2d at 1235–1236; *Hollins v. Powell*, 773 F.2d 191, 197 (8th Cir.1985), *cert. denied*, 475 U.S. 1119, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986).

For the reasons stated in granting Dearixon's Motion for Judgment as a Matter of Law and, in the alternative, Dearixon's Motion for New Trial, I would also grant his Motion for Remittitur if the other two motions had not been granted. Having granted the other two motions, no further discussion of this one is necessary. The Motion for Remittitur will be denied as moot.

### IV. Defendant Williams' Motion for Judgment as a Matter of Law

■ Defendant Williams argues that judgment as a matter of law should be granted in his favor for the following reasons: 1) the evidence was insufficient to establish the existence of a sexually hostile atmosphere, much less a sexually hostile atmosphere so intolerable that plaintiff was constructively discharged as a result of the conduct of Williams; 2) plaintiff was not entitled to damages because she would have been fired upon the DOC's discovery that plaintiff lied on her job application to the DOC; 3)

Williams is immune from money damages due to qualified immunity; 4) the court erroneously allowed plaintiff's expert to testify about front pay damages when plaintiff had not established constructive discharge; and 5) the court erroneously allowed plaintiff's expert to testify about front pay damages because the numbers were misleading and unfair.

Plaintiff worked in Housing Unit 3–C between June 7, 1987 and September 27, 1987. Plaintiff worked in Housing Unit 2A & B between September 27, 1987 and May 1, 1988. During this time, Williams, who was a relief sergeant (CO-2), was plaintiff's immediate supervisor two days a week.

Plaintiff relies on evidence of the following acts and statements to support the verdict against Williams: 1) Williams said that "if God wanted women to work at MSP, He'd have given them brains;" 2) Williams said that "I wish I was a woman so I could come to work when I wanted to and work where I wanted to" when Jerrell Roth was absent one day; 3) Williams said that "if I ever have a problem with the inmates, I'll throw them a woman, that'll keep 'em busy for awhile;" 4) Williams told plaintiff that he was going to auction plaintiff to the inmates after she returned from lunch, and told her when she returned from lunch that the bidding was up to $300; 5) on Valentine's Day, Williams said that "every man needs a wife and a mistress;" 6) Williams tore up inmate violations written by plaintiff in front of the inmates; 7) Williams kicked a box down the stairs with plaintiff's name on it; 8) Williams allowed an obscene sign hanging in an inmate's cell to remain hanging too long after plaintiff asked Williams to have the sign taken down; 9) Williams did not allow plaintiff to work the walks; and 10) Williams told plaintiff on numerous occasions that plaintiff was gone too long to the rest room, even though plaintiff had to walk a considerable distance to the nearest women's rest room. Plaintiff's Suggestions in Opposition to Defendant Williams' Motion for Judgment as a Matter of Law and New Trial at 5. Not all of Williams' statements were made to plaintiff, nor was she present when he made some of them. Although not relied upon by plaintiff, Jerell

Roth testified that Williams was a "smart mouth" to women, and Clifford Oetting testified that Williams made many comments about women.

The jury was instructed on plaintiff's theory, which was that William intentionally made plaintiff's working conditions intolerable because she was a woman:

Your verdict must be for plaintiff and against defendant Robert Williams on plaintiff's claim that she was treated differently from male corrections officers by defendant Williams because she is a woman if you believe:

FIRST, defendant Williams intentionally made plaintiff's working conditions intolerable;

SECOND, defendant Williams did so because plaintiff is a woman; and

THIRD, as a direct result of what defendant Williams did, and only what defendant Williams did, plaintiff was damaged.

In considering the claim against defendant Williams, you may consider ONLY acts in which defendant Williams personally participated.

If all of you do not believe all three elements listed above, then your verdict must be for defendant Williams.

On the other hand, if each of you believes the three elements listed above, your verdict must be for plaintiff Deborah Stafford.

Instruction 17.

Considering the evidence in the light most favorable to plaintiff and giving her the benefit of all favorable inferences that reasonably may be drawn from the facts proved, I believe that there was sufficient evidence from which a jury reasonably could conclude that Williams made plaintiff's working conditions intolerable on the two days a week that they worked together. The jury could reasonably have concluded that on those two days a week, Williams intentionally treated plaintiff differently than other CO-1s because she was a woman. Therefore, I will not vacate the jury's award of damages in the amount of $35,700 to compensate plaintiff for embarrassment and humiliation she suffered as the result of Williams' conduct.

■ Additionally, the jury reasonably could have concluded that Williams' conduct was "motivated by evil motive or intent, or that defendant Williams was callously or recklessly indifferent to plaintiff's right not to be treated differently from male corrections officers because she was a woman." *See* Instruction 20. Thus, the jury's award of $1 punitive damages will not be vacated.

■ However, no reasonable jury could have concluded that Williams' conduct caused plaintiff to be constructively discharged. A constructive discharge exists when an employer deliberately renders the employee's working conditions intolerable and thus forces her to quit her job. *Smith v. Goodyear Tire & Rubber Co.*, 895 F.2d 467, 472 (8th Cir.1990); *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981). The employer's actions must have been taken with the intention of forcing the employee to quit. *Bunny Bread*, 646 F.2d at 1256. "An employee may not be unreasonably sensitive to his working environment. A constructive discharge arises only when a reasonable person would find conditions intolerable." *Bunny Bread*, 646 F.2d at 1256. "Part of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast." *Smith*, 895 F.2d at 473 (emphasis in original). To prevail on a claim for constructive discharge, a claimant must resign within a reasonable time after last being subject to discrimination. *Smith v. Bath Iron Works Corp.*, 943 F.2d 164, 167 (1st Cir.1991) (no constructive discharge when harassment ended November 13, 1985, but plaintiff did not resign until May 1986); *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir.1989) (no constructive discharge when the harassment ended on March 27, 1985, but plaintiff did not resign until April 8, 1985).

During the 11–month period when plaintiff worked for Williams, who was a relief sergeant, Williams supervised plaintiff only two days a week. Their contact for the first four of those months in Housing Unit 3–C was minimal. Considering the limited contact between plaintiff and Williams, plaintiff would have to show either severe mistreatment or frequent and continuous mistreatment for two-fifths of the work week to create conditions so intolerable that a reasonable woman would be forced to quit her job. The evidence plaintiff relies on, even if taken as true, establishes only a series of separate events. A reasonable woman would view some of the events as trivial, some as distasteful, but none as seriously violative.

Plaintiff and Williams ceased working together May 1, 1988, when plaintiff transferred from MSP to the Tipton Correctional Center. Plaintiff received a two-level promotion when she transferred to the Tipton facility for the last four months of her employment with the DOC. Plaintiff would have received another significant raise had she not resigned. Plaintiff did not resign from the DOC until September 9, 1988. There was no evidence that defendant Williams did anything to plaintiff from May 1, 1988, to September 9, 1988. Plaintiff testified that she left Tipton because the work was slow, she was pregnant and she had obtained a job in her hometown that would not require her to commute, which she had to do to work at Tipton. The job in her hometown was supervisory and had a higher salary than her job with the DOC. Plaintiff testified that she was not subjected to any harassment or discrimination while at Tipton. Plaintiff also testified that she resigned because she believed that she could never go back to the custody side of the Department of Corrections. Therefore, she would not have a chance for promotion to the top management of the Department of Corrections because top management came up through custody, not treatment. The uncontroverted evidence was that most of the highest-ranking officials of the DOC, including Director Dick Moore, had come up through the treatment side of the DOC.

Because of the delay in plaintiff's resignation, coupled with the sporadic nature of Williams' behavior (whatever he did only occurred two days a week), a reasonable jury could not have concluded that Williams' actions drove plaintiff out of the DOC.

Defendant Williams' Motion for Judgment as a Matter of Law will be granted on the issue of constructive discharge. The $65,800 awarded to plaintiff by the jury for construc-

tive discharge caused by defendant Williams will be vacated.

■ Williams' other arguments for judgment as a matter of law are not persuasive. He argues that plaintiff was not entitled to damages because she would have been fired upon the department's discovery that plaintiff lied on her job application to the department. However, Larry Nelson, a training officer/investigator for the DOC, testified he knew that plaintiff had lied on her application but told plaintiff that she did not need to worry about it. Also, there was evidence that the DOC knew that other employees had lied on their job applications but had not fired them. Therefore, the jury reasonably could have concluded that the DOC knew that plaintiff lied on her application, did nothing about it, or that if DOC learned about it in the future, plaintiff would not have been discharged.

■ Next, Williams argues that he is immune from money damages due to qualified immunity.

Defendants attempted to submit an instruction to the jury on the issue of qualified immunity but I rejected the proposed instruction because qualified immunity is not an issue for the jury to decide. At no time prior to trial or during trial did defendants move for judgment on the basis of qualified immunity. Williams did not properly raise the defense of qualified immunity until the Motion for Judgment as a Matter of Law.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The plaintiff may not defeat the qualified immunity defense simply by alleging the violation of a general right, e.g., the right to equal protection of the laws; "[t]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Plaintiff argues that Williams cannot raise a qualified immunity defense after the jury has found intentional discrimination. Plaintiff relies upon *Goodwin v. Circuit Court of St. Louis County*, 729 F.2d 541 (8th Cir. 1984), wherein the Court of Appeals stated that:

> the defense of "good faith" or qualified immunity is not available in this case. By definition, there can be no liability in such an action unless the plaintiff shows that the defendant intentionally discriminated against her because of her sex. If the jury finds that intentional discrimination has occurred, and if, as in this case, the evidence is sufficient to support that finding, "good faith" on the part of the defendant is logically excluded.

*Id.* at 545–546.

■ Although subjective good faith was the test in 1984, it has been replaced by an objective test. *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038. Subjective "good faith" is thus irrelevant.

Second, the jury's verdict did not address the issue involved in the analysis of whether qualified immunity applies. The jury must determine whether the defendant violated plaintiff's rights. The jury does not consider whether the rights were clearly established at the time the defendant acted. The jury does not consider whether a reasonable defendant would have known that his conduct violated plaintiff's rights. On the other hand, these are the issues I must resolve in determining whether qualified immunity applies.

■ A district court is rarely called upon to determine qualified immunity after judgment because competent counsel, recognizing that qualified immunity is not merely a defense to liability but an immunity from suit, *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985), will usually move for judgment on the basis of qualified immunity before trial or even before discovery. Nevertheless, qualified immunity is a defense to liability, and may be raised after judgment. *Rellergert v. Cape*

*Girardeau, Missouri,* 924 F.2d 794, 796 (8th Cir.1991).

The right not to be discriminated against on the basis of sex was clearly established by 1987. A reasonable person would have known of this right. More particularly, a reasonable person would have known that Williams conduct toward plaintiff violated her right not to be treated differently because of her sex. Accordingly, Williams is not entitled to qualified immunity.

Finally, Williams argues that plaintiff's expert should not have been allowed to testify about front pay damages, but the issue of front pay damages is moot because I am vacating the jury's award of damages for constructive discharge.

### V. *Defendant Williams' Motion for New Trial*

■ The jury verdict (except for the jury's award of damages for constructive discharge) was not so against the weight of the evidence that it was a miscarriage of justice.

Admittedly, there was substantial evidence that could have permitted a reasonable jury to have rejected plaintiff's claim that her sex was the cause of Williams' treatment of her. The jury could have believed that Williams' offensive comments to plaintiff, although were calculated to offend her, were motivated by Williams' dislike of plaintiff's personality and not by her gender.

On the other hand, because the words Williams used suggest a bias against women, it was not unreasonable for the jury to conclude that Williams' behavior was motivated by plaintiff's gender.

However, for the reasons already discussed, the jury's conclusion that plaintiff was constructively discharged by Williams' behavior is so against the weight of the evidence that it constitutes a miscarriage of justice.

Therefore, Williams' Motion for New Trial is granted on the issue of constructive discharge but denied on the issue of liability.

### VI. *Defendant Williams' Motion for Remittitur*

■ Williams' Motion for Remittitur will be denied in part because the $35,700 award-ed by the jury for embarrassment and humiliation is not so grossly excessive as to shock the conscience. However, the motion will be granted insofar as the damages for constructive discharge.

### VII. *Plaintiff's Motion to Conform Verdict*

Plaintiff's moves "to Conform Verdict to Findings of Jury or, Alternatively, for Additur." Plaintiff asserts that the jury found that plaintiff's total damages due to constructive discharge were $94,108. Plaintiff argues that $94,108 should be awarded to plaintiff twice—once against Williams and once against Dearixon. This issue is moot because the jury's award of $94,108 for constructive discharge will be vacated.

### VIII. *Plaintiff's Motion for Pre–Judgment Interest*

■ The availability of an award of pre-judgment interest on a claim arising under a federal statute is a matter of federal law, not the law of the forum state. *WJM, Inc. v. Massachusetts Dept. of Public Welfare,* 840 F.2d 996, 1006 n. 13 (1st Cir.1988). Generally, pre-judgment interest is awarded if the amount is reasonably ascertainable in order to make the claimant whole because the claimant has been denied the use of the money. *Winter v. Cerro Gordo County Conservation Board,* 925 F.2d 1069, 1073 (8th Cir.1991). In an employment discrimination action under § 1983, pre-judgment interest can be recovered only on "the ascertainable wages [plaintiff] was denied after [her] discharge." *Id.*

Here, plaintiff's damages were for embarrassment and humiliation, not constructive discharge. Thus, she lost no wages as the result of Williams' harassment. In addition, the amount of damages for embarrassment and humiliation was not reasonably ascertainable until the jury returned with its verdict. Plaintiff was not otherwise entitled to the $35,700 and thus was not denied its use. Accordingly, plaintiff is not entitled to pre-judgment interest and her motion for pre-judgment interest will be denied.

### IX. *Title VII and § 213.055*

Plaintiff asserts claims of sex discrimination and sexual harassment pursuant to Title

VII and Mo.Rev.Stat. § 213.055 based upon the same facts supporting her claims under § 1983. These claims are asserted against the DOC and the seven individual defendants. Plaintiff claims against the individual defendants in both their individual and official capacities.

A Title VII claim may not be brought against a supervisory employee in his/her individual capacity. *Miller v. Maxwell's International, Inc.*, 991 F.2d 583, 587 (9th Cir.1993); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991); *Harvey v. Blake*, 913 F.2d 226, 227–28 (5th Cir.1990); *Weiss v. Coca–Cola Bottling Co.*, 772 F.Supp. 407, 411 (N.D.Ill.1991). Thus, plaintiff's Title VII and § 213.055 claims against the individual defendants in their individual capacities will be dismissed.

A claim against an individual acting in his official capacities is simply another way of claiming against the employer. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

> As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity.... It is *not* a suit against the official personally, for the real party in interest is the entity.

*Graham*, 473 U.S. at 166, 105 S.Ct. at 3105 (emphasis in original) (internal citation omitted). Thus, any relief afforded to plaintiff will be at the expense of the employer, not its agent. *Busby*, 931 F.2d at 772; *Harvey*, 913 F.2d at 227–28; *Weiss*, 772 F.Supp. at 411.

There are two actionable forms of sexual harassment. The first, "quid pro quo" harassment, occurs when a supervisor conditions the granting of an economic or other job benefit upon the receipt of sexual favors from a subordinate, or punishes that subordinate for refusing to comply. *Jones v. Wesco Investments, Inc.*, 846 F.2d 1154, 1156 (8th Cir.1988); *Carrero v. New York City Housing Authority*, 890 F.2d 569, 577 (2d Cir.1989); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 897 (1st Cir.1988). The second, "hostile environment" harassment, occurs when one or more supervisors or co-workers create an atmosphere so infused with hostility toward members of one sex that the supervisors or co-workers alter the conditions of employment for the victims. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986); *Jones*, 846 F.2d at 1156; *Pontarelli*, 930 F.2d at 112 n. 14; *Lipsett*, 864 F.2d at 897.

To prevail on a hostile environment sexual harassment claim, plaintiff must establish that: 1) she belongs to a protected group, 2) she was subject to unwelcome sexual harassment, 3) the harassment was based on sex, 4) the harassment affected a "term, condition, or privilege" of employment, and 5) the employer knew or should have known of the harassment in question and failed to take proper remedial action. *Burns v. McGregor Electronic Industries, Inc.*, 955 F.2d 559, 564 (8th Cir.1992); *Moylan v. Maries County*, 792 F.2d 746, 749 (8th Cir.1986). In determining whether a hostile environment has been created, the factfinder must consider the totality of the circumstances "without dividing the work environment into a series of discrete incidents and then measuring the harm occurring in each episode." *Burns v. McGregor Electronic Industries, Inc.*, 989 F.2d 959, 961 (8th Cir.1993). The standard for determining whether a hostile environment has been created is that of a reasonable woman under similar circumstances. *Id.* at 962 n. 3.

Not all workplace conduct that may be described as "harassment" affects a "term, condition or privilege" of employment within the meaning of Title VII. "For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor*, 477 U.S. at 67, 106 S.Ct. at 2405 (internal quotations marks omitted).

> The plaintiff must show a practice or pattern of harassment against her or him; a single incident or isolated incidents generally will not be sufficient. The plaintiff must generally show that the harassment is sustained and nontrivial ... whether sexual harassment at the workplace is sufficiently severe and persistent to affect

seriously the psychological well-being of employees is a question to be determined with regard to the totality of the circumstances.

*Moylan,* 792 F.2d at 749–750. To prevail on any disparate treatment Title VII claim, plaintiff must establish that the defendant intentionally discriminated against her. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2745, 125 L.Ed.2d 407 (1993).

"[W]hen 1983 and Title VII claims are tried jointly, the § 1983 theory to the jury and the Title VII theory to the court, a jury verdict on the issue of discrimination would collaterally estop the parties with respect to that issue on the Title VII claim." *Ways v. City of Lincoln,* 871 F.2d 750, 755 (8th Cir. 1989) (internal quotation marks omitted). Thus, "the district court is without power to render a judgment on the Title VII claim inconsistent with the jury's finding on the 1983 claim." *Id.* at 756.

For the reasons stated on the record during trial when I granted to all defendants judgment as a matter of law on plaintiff's § 1983 sex discrimination claim for failure to promote, I find in favor of the DOC and all of the individual defendants in their official capacities on plaintiff's sex discrimination claims for failure to promote pursuant to Title VII and Mo.Rev.Stat. § 213.055. Plaintiff failed to present any evidence suggesting that her failure to be promoted while at MSP was the result of sex discrimination by the DOC or any of its agents.

■ Regarding plaintiff's Title VII and § 213.055 hostile environment claims against the DOC and its agents, I find that none of the individual defendants, except for defendant Williams, subjected plaintiff to unwelcome gender-based harassment affecting a term, condition or privilege of plaintiff's employment.

■ Williams' conduct can be attributed to the DOC only if he was an agent of the DOC within the meaning of § 2000e(b). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees ... and any agent of such a person." 42 U.S.C. § 2000e(b). An employer will be subject to liability under Title VII if (1) the harasser is the employer or one of the employer's supervisors who is determined to be agent of the employer, or (2) the employer knew or should have known of harassment caused by a co-worker, but failed to take corrective action. *Kauffman v. Allied Signal, Inc.,* 970 F.2d 178, 182–183 (6th Cir.1992); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1558–1559 (11th Cir.1987); *Turner v. Barr,* 811 F.Supp. 1, 2–3 (D.D.C.1993); *Cronin v. United Service Stations, Inc.,* 809 F.Supp. 922, 928 (M.D.Ala.1992); *see Burns,* 989 F.2d at 966. Here, Williams was plaintiff's immediate supervisor, not a co-worker, so the DOC will be liable only if Williams was acting as the DOC's agent.

In determining whether a supervisor was acting as an "agent," courts must look for guidance to common law agency principles. *Meritor,* 477 U.S. at 71, 106 S.Ct. at 2408 (citing *Restatement (Second) of Agency* §§ 219–237 (1958)). Employers are not "always automatically liable for sexual harassment by their supervisors." *Id.*

In general, "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Restatement (Second) of Agency,* § 219(1); *Kauffman,* 970 F.2d at 184; *Sparks,* 830 F.2d at 1558 n. 5. A servant's conduct is within the scope of employment only if:

(a) the conduct is of the kind he is authorized to perform or incidental thereto;

(b) the conduct occurs substantially within the authorized time and space limits;

(c) the conduct is actuated, at least in part, by a purpose to serve the master.

*Restatement (Second) of Agency,* §§ 228(1), 229(1).

Williams' conduct occurred inside MSP during working hours, and was motivated, at least in part, by a desire to serve the DOC. Although he was not authorized to engage in harassing conduct, "[a]n act, although forbidden, or done in a forbidden manner, may be within the scope of employment." *Restatement (Second) of Agency* § 230. Under the evidence, Williams was a sergeant in a par-

amilitary organization and plaintiff was a subordinate. As a sergeant, Williams had been delegated the authority by the DOC to supervise plaintiff two days a week, to assign her work, to discipline her and to evaluate her performance. As such, Williams' harassment of plaintiff was within the scope of his employment and Williams was an agent of the DOC for the purposes of Title VII.

Because Williams was an agent of the DOC, his harassing conduct is attributed to the DOC. Pursuant to *Ways*, I am collaterally estopped from rendering judgment on plaintiff's Title VII and § 213.055 claims inconsistent with the jury's findings on plaintiff's § 1983 claim.

Based on the jury's verdict, I find that Williams, as an agent of the DOC, treated plaintiff differently because . of her sex. Therefore, I find for plaintiff on her Title VII and § 213.055 claims.

For the reasons stated previously, I do not believe that plaintiff was constructively discharged, either by any individual defendant or by the defendants collectively. No reasonable woman in plaintiff's position would have felt that her conditions of employment were "intolerable." Thus, judgment will be granted to defendants on plaintiff's claims for constructive discharge pursuant to Title VII and § 213.055.

Plaintiff seeks back pay, an injunction, attorney's fees and costs on her Title VII and § 213.055 claims. Because plaintiff was not constructively discharged, she is not entitled to back pay. The DOC will be enjoined from discriminating on the basis of sex. Plaintiff may file a motion for attorney's fees and costs.

## X. *Conclusion*

Accordingly, it is ORDERED that:

1) defendant Dearixon's Motion for Judgment as a Matter of Law is granted;

2) in the alternative, defendant Dearixon's Motion for New Trial is granted;

3) defendant Dearixon's Motion for Remittitur is denied as moot;

4) defendant Williams' Motion for Judgment as a Matter of Law is granted in part and denied in part, and the award by the jury of $65,800 to plaintiff for constructive discharge is vacated;

5) in the alternative, defendant Williams' Motion for New Trial is granted in part and denied in part;

6) defendant Williams' Motion for Remittitur is denied;

7) plaintiff's claims against defendants Moore, Carmichael, Adams, Vance, Oetting, Dearixon and Williams in their individual capacities pursuant to Title VII and § 213.-055 are dismissed with prejudice;

8) judgment is granted in favor of plaintiff on her Title VII and § 213.055 claims for discrimination on the basis of sex affecting the terms and conditions of plaintiff's employment;

9) judgment is granted in favor of defendants on plaintiff's Title VII and § 213.055 claims for hostile environment and constructive discharge;

10) the Department of Corrections is enjoined from discriminating against its employees on the basis of sex. The Department of Corrections shall immediately post in the manner described below the following notice:

### *NOTICE OF POLICY PROHIBITING SEXUAL DISCRIMINATION*

The Department of Corrections does not discriminate against employees or applicants for employment on the basis of sex. The Department of Corrections will not tolerate harassment or different treatment because of sex by its supervisors or other employees. If you believe that you have been treated differently because of your sex, you should report the circumstances in writing to the Department of Corrections making reference in your complaint to this Notice.

The Department of Corrections shall post this notice in a prominent place in all of its facilities in every area where employees regularly congregate and on every bulletin board or other location where Department of Corrections' employment opportunities are advertised. The Department of Corrections shall keep a record of all complaints received

making reference to this Notice, including the time the complaint was received, the name of the complainant and the disposition of the complaint;

11) plaintiff's Motion for Pre–Judgment Interest is denied; and

12) plaintiff's Motion to Conform Verdict or, Alternatively, for Additur is denied;

13) within 30 days from the date of this order, plaintiff may file a motion for attorney's fees;

14) within 45 days from the date of this order, defendant may file suggestions in opposition to plaintiff's motion for attorney's fees; and

15) within 60 days from the date of this order, plaintiff may file reply suggestions in support of her motion for attorney's fees.